FILED
2025 Jan-06  PM 06:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBBIN PRITCHETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | **2:23-cv-01365-RDP** |
| **MIDLAND CREDIT MANAGEMENT,** | ) | |
| **LLC, et al.,** | ) | **OPPOSED** |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Respectfully Submitted,

*/s/ W. James Sears*
**W. James Sears**
**John G. Watts**
**M. Stan Herring**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
james@wattsherring.com
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**

1

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... 1

INTRODUCTION ................................................................................................................... 2

STATEMENT OF UNDISPUTED FACTS ............................................................................. 3

ARGUMENT AND RELEVANT LEGAL AUTHORITY ..................................................... 9

    I.     The MCM letter was sent in connection with the collection of a debt. ............................... 9

    II.    MCM violated § 1692c(a)(1) of the FDCPA by sending mail to Pritchett's home address, a location which MCM knew or should have known was an inconvenient location. .............................. 14

    III.    MCM violated § 1692d of the FDCPA when it communicated with Pritchett through mail after Pritchett requested the MCM only use email and text to communicate with her...................... 17

    IV.    MCM violated § 1692e of the FDCPA when it misrepresented that she had inquired about the accuracy of her account and had requested documentation as a pretense to continue its debt collection efforts against her. ................................................................................................. 19

CONCLUSION ....................................................................................................................... 21

**COMES NOW**, the Plaintiff, ROBBIN PRITCHETT, by and through the undersigned counsel of record, and for her Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, states as follows:

<u>**INTRODUCTION**</u>

The Plaintiff, Robbin Pritchett, (herein "Pritchett, or "Plaintiff") files her Motion for Partial Summary Judgment and respectfully moves this honorable Court to enter the limited findings as a matter of law that the Defendant, Midland Credit Management, LLC, (herein "MCM", or the "Defendant"), a debt collector, violated §§ 1692c(a)(1), 1692d, and 1692e, of the Fair Debt Collection Practices Act, 15 U.S.C., (the "FDCPA), by:

1. Sending a communication in the connection with the collection of a debt through the mail to Pritchett at a location which MCM knew or should have known was inconvenient after Pritchett expressly told MCM that mail was not convenient to her, thereby violating § 1692c(a)(1).

2. Engaging in conduct the natural consequence of which was to harass, abuse, and oppress Pritchett by communicating with her through a medium of communication prohibited by Pritchett, and by failing to communicate through the mediums of communication which Pritchett expressly specified and instructed MCM to use, in violation of § 1692d.

3. Using false, deceptive, and misleading representations and means in connection with the collection of a debt by making untruthful statements regarding Pritchett's requests for MCM to not send her information and documentation and to not send her mail.

The undisputed facts establish that approximately a year after MCM, acting as a debt collector, had initiated collection attempts against Pritchett for the collection of a consumer debt, she sent a letter to MCM by mail stating that 1) she **was not** requesting any information,

documentation, validation, or verification, 2) she **did not** want any mail from MCM because mail was inconvenient to her, and 3) the **only** convenient way to communicate with her was through email or text.

The FDCPA entitled Pritchett to certain protections from MCM. The FDCPA prohibited MCM from contacting Pritchett at a location which it knew or should have known to be inconvenient pursuant to § 1692c(a)(1). The FDCPA prohibited MCM from engaging in harassing, abusive, and oppressive conduct by contacting her through mediums of communication which it knew was not convenient to her pursuant to § 1692d. And the FDCPA prohibited MCM from using false, deceptive, and misleading representations and means to attempt to collect from Pritchett pursuant to § 1692e.

MCM received Pritchett's letter, and rather than honor Pritchett's requests and protections under the FDCPA, it responded by sending her a response in the mail to her home. MCM's letter was sent by mail to her home address although Pritchett had notified it that mail was inconvenient. By sending the letter to this location, MCM violated § 1692c(a)(1). Also, although Pritchett had requested MCM only communicate with her by email or text, MCM used a different medium of communication, the mail, in violation of § 1692d. Additionally, MCM's letter used false, deceptive, and misleading statements to misrepresent Pritchett's attempt to communicate her requests by explain to her the reason it sent her verification and documentation was because she did request in her letter that MCM do so. This was a direct misrepresentation of what Pritchett had expressed to MCM in violation of § 1692e.

## STATEMENT OF UNDISPUTED FACTS

1.    At all times, MCM was a debt collector as defined by § 1692a(6) of the FDCPA. Pritchett was a consumer as defined by § 1692a(3) of the FDCPA. The alleged debt which MCM attempted

to collect from Pritchett and which became the subject of MCM's collection attempt litigated in this matter arose out of transactions that were primarily for personal, family, and household purposes (primarily used to pay her income taxes). (Plaintiff's Exhibit 1, Deposition Transcript of Pritchett, Pritchett Dep. at 21:17-22:4 **(ECF 24, p. 7)**; Exhibit 2, Deposition Transcript of MCM's FRCP 30(b)(6) Corporate Rep., Bernadette Canez, Canez Dep. 93:5-94:10 **(ECF 25, p. 26)**.)

2.      MCM initiated collection efforts against Pritchett as early as April 26, 2022, for the collection of a debt alleged to have accrued from a Citibank, N.A., credit card with account ending in 7505 by sending her a collection letter through the mail to Pritchett's home address of 7664 Williams Creek Lane, Eight Mile, Alabama, 36613.  (Ex. 1-5, April 26, 2022, MCM collection letter to Pritchett attached to Pritchett Deposition as Defendant's Exhibit 5 **(ECF 24-5, p. 2)**.)

3.      Just over a year later, on July 6, 2023, MCM sent a collection letter to Pritchett through the mail to her home address of 7664 Williams Creek Lane, Eight Mile, Alabama, 36613, for the same account. (Ex. 24-6, July 6, 2023, Collection Letter from Midland attached to Pritchett Dep. as Defendant's Exhibit 6 **(ECF 24-6, p. 2)**; Ex. 1-3, Pla. Responses to First Set of Consolidated Disc. Reqs. from Midland, Response to Interrogatory No. 2, attached to Pritchett Dep. as Defendant's Exhibit 3 **(ECF 24-3, pp. 2-3)**.)

4.      On July 19, 2023, Pritchett mailed via certified mail a letter dated July 19, 2023, (herein, "Pritchett's letter") to MCM.  (Exhibit 1-7, July 19, 2023, Pritchett's Letter to Midland attached to Pritchett Dep. as Defendant's Exhibit 7 **(ECF 24-7, p. 3)**; Ex. 1, Pritchett Dep. at 34:17-35:35 **(ECF 24, p. 10)**; Ex. 1-3, Response to Interrogatory No. 2 **(ECF 24-3, pp. 2-3)**.)

5.      Pritchett's letter stated in part:

> I'm disputing this debt (and all other debts you claim that I have) under the Fair Debt Collection Practices Act only.  You can find all debts you claim to have on me - I dispute them all.  **Please note I do NOT want you to send me any information** - I simply want you to know that I dispute any debts you claim to have

on me.  **This is not a request for validation or verification.  I am not interested in you sending me any documentation.  I'm trying to be clear - do not send me any documentation through the mail as receiving mail from you is inconvenient to me.**

**If you want to communicate with me, there are only two convenient ways I want you to communicate with me - text and email.  All other ways are inconvenient, and I do not want you to communicate with me in any way other than email or text.**  You can email me at [REDACTED] and you can text me at [REDACTED].

(Ex. 1-7, **(ECF 24-7, p. 3)**)(Emphasis added).

6.      Pritchett's letter identified her home address where she receives mail at 7664 Williams Creek Lane, Eight Mile, Alabama, 36613, by listing it under her printed name along with her date of birth and social security number. (Ex. 1-7, **(ECF 24-7, p. 3)**; Ex. 1, Pritchett Dep. 29:21-23 **(ECF. 24, p. 9)**, 39:6-40:8 **(ECF. 24, p. 11)**; Ex. 1-8, Google Street image of Pritchett's residence attached to Pritchett Dep. as Defendant's Exhibit 8 **(ECF. 24-8, p. 2)**; Ex. 1-3, Response to Interrogatory No. 2 **(ECF 24-3, pp. 2-3)**.)

7.      Pritchett sent the Pritchett letter expecting MCM to honor her requests to not communicate with her by mail. (Ex. 1, Pritchett Dep. 78:10-79:6 **(ECF. 24, p. 21)**.

8.      Receiving documentation in the mail was inconvenient for Pritchett for a number of reasons.  Her two adult children would often visit her home at 7664 Williams Creek Lane for up to a week at a time.  During these visits they had sometimes retrieved her mail. They did not know about her financial situation during this period that MCM had attempted to collect from her. Pritchett would be stressed and embarrassed if these children found mail from a debt collector and by the prospect that they would open it and discover her financial situation.  (Ex. 1, Pritchett Dep. 38:15-40:5 **(ECF. 24, p. 11)**, 71:7-73:15 **(ECF. 24, pp. 19-20)**; Ex. 1-3, Response to Interrogatory 19 **(ECF. 24-3, pp. 14-16)**.)

9.      Pritchett also did not want her husband to see collection notices because doing so would worry him, which would worry her.  Ex. 1, Pritchett Dep. 46:22-47:14 **(ECF. 24, p. 13)**.  Her husband had suffered a work injury lifting heavy packages as a mail clerk as a US Postal Service employee.  The injury prevented him from working.  He was placed on unpaid leave, had no health insurance for the injury, and was not able to obtain disability or workers compensation during this time.  Consequently, Pritchett and her husband went from two incomes to just hers, which, along with COVID complications where Pritchett was placed on unpaid leave, precipitated their financial struggles.  Ex. 1, Pritchett Dep. 73:16-78:2 **(ECF. 24, p. 20-21)**.  By preventing collection notices arriving at her home, she was trying to maintain less stress for her husband, which in turn, would be less stress for herself.  Ex. 1, Pritchett Dep. 46:22-47:14 **(ECF. 24, p. 13)**, 86:7-14 **(ECF. 24, p. 23)**.

10.      Additionally, leading up to this period, Pritchett's neighbors sometimes had received her mail, opened it, then returned it to her. The prospect of these neighbors opening her mail from a debt collector stressed and worried her.  Ex. 1, Pritchett Dep. 38:15-40:5 **(ECF. 24, p. 11)**.

11.      MCM received Pritchett's letter on or about July 25, 2023.  (Ex. 2, Canez Dep. 172:13-19 **(ECF 25, p. 45)**; Ex. 1-3, Response to Interrogatory No. 2 **(ECF. 24-3, pp. 3-4)**.)

12.      In response to Pritchett's letter informing MCM that she did not want any mail, information, documentation, validation, or verification sent by mail, MCM sent a letter dated July 31, 2023, by mail to Pritchett's home address of 7664 Williams Creek Lane, Eight Mile, Alabama, 36613 (herein "the MCM letter"). (Ex. 1-22, MCM's July 31, 2023, Letter to Pritchett attached to Deposition Transcript of MCM's Corporate Rep., Bernadette Canez, as Plaintiff's Exhibit 3 **(ECF 24-21, pp. 2-6)**; Ex. 1-3, Response to Interrogatory No. 2 **(ECF. 24-3, pp. 3-4)**.)

13.      The MCM letter stated in part:

**We understand that you are inquiring about or requesting documentation about the accuracy of our records concerning this account.**  After reviewing the information you provided, our account notes, and information provided by the previous creditor, with an address of 701 EAST 60th STREET NORTH SIOUX FALLS, SD 57117, we have concluded that our information is accurate.  **We have also enclosed documents regarding the account**… [A]s previously requested by you, we will no longer be contacting you regarding this account by phone or in writing unless required by law or you request that we resume communications.

(Ex. 1-22 **(ECF 24-21, pp. 2)**) (Emphasis added.)

14.    The MCM letter enclosed an account statement from the Citibank, N.A., account ending in 7507, and the MCM letter expressly directed Pritchett's attention to this enclosure.  (Ex. 1-22 **(ECF 24-21, pp. 2, 5-6)**)

15.    The MCM letter stated "Please understand this is a communication from a debt collector. This is an attempt to collect a debt.  Any information obtained will be used for that purpose."  (Ex. 1-22 **(ECF 24-21, p. 3)**)

16.    The MCM letter prompted Pritchett as the next sequence, or next step, after receiving the MCM letter to contact MCM by stating "**<u>Next steps:</u>** In order for us to further investigate your inquiry please provide the following:  Written explanation and documentation demonstrating any errors in your account information." (Ex. 1-22 **(ECF 24-21, p. 3)**) (Emphasis original).)

17.    The MCM letter showed in numerous locations the balance amount owed of $2,031.98; twice on the first page in the top right and in the center of the page and five times on the fourth page of the account statement.  (Ex. 1-22 **(ECF 24-21, pp. 2, 5)**) The letter also showed interest amounts; once on the first page in the center as "$0.00", and as $33.60 on the fourth page and again on the fifth page. (Ex. 1-22 **(ECF 24-21, pp. 2, 5-6)**)

18.    The MCM letter further stated details about the balance owed on the account and Midland's purported ownership and right to collect the debt from Pritchett:

>**Some additional information about your account:** **Date opened:** 9/9/2018. **Date of charge off:** 2/18/2022. **Current servicer:** Midland Credit Management, Inc.. **Date purchased:** 4/22/2022. **Original purchase balance:** $2,031.98. **Accrued interest:** $0.00. **Accrued fees:** $0.00. **Total payments/Adjustment applied:** $0.00. **Date paid in full (if applicable):** .

(Ex. 1-22 **(ECF 24-21, p. 2)**) (Emphasis original).)

19. The MCM letter also provided telephone numbers where it could be contacted enabling Pritchett to make a payment to the debt. (Ex. 1-22 **(ECF 24-21, pp. 2-3)**)

20. The MCM letter further provided Pritchett information to make a payment by collectively displaying all pertinent account information necessary to contact MCM to make such a payment further directing Pritchett to "Send Payments to:" along with MCM's mailing address, as shown below:



| Calls to and/or from this company may be monitored or recorded. | | | |
|---|---|---|---|
| Original Creditor | CITIBANK, N.A. | MCM Account Number | 316929381 |
| Original Account Number | xxxxxxxxxxxx7505 | Charge-Off Date | 2/18/2022 |
| Current Creditor *The sole owner of this debt* | Midland Credit Management, Inc. | Current Servicer | Midland Credit Management, Inc. |
| **Important Contact Information** | | | |
| Send Payments to: Midland Credit Management, Inc. PO Box 2004 Warren, MI 48090-2004 | Send disputes or an instrument tendered as full satisfaction of a debt to: Attn: Consumer Support Services 320 E Big Beaver Rd. Suite 300 Troy, MI 48083 **You may also call: 877-382-6063** | | Physical Payments for Colorado Residents: Colorado Manager, Inc. 8690 Wolff Court, Suite 110 Westminster, CO 80031 Phone (303) 920-4763 |

(Ex. 1-22 **(ECF 24-21, p. 3)**) (Emphasis original).)

21. Pritchett received the MCM letter shortly thereafter. (Ex. 1, Pritchett Dep. 42:1-18 **(ECF. 24, p. 12)**; Ex. 1-3, Response to Interrogatories Nos. 2, 15, 16 **(ECF 24-3, pp. 2-3, 12-13)**.)

22. On receiving and reading the MCM letter, Pritchett was confused because the MCM letter told her she had inquired about the accuracy of the debt and had requested documentation. However, she expressly said she was not inquiring about any validation or verification and that

she was not requesting documentation.  (Ex. 1, Pritchett Dep. 43:1-6 **(ECF. 24, p. 12)**, 80:10-81:19 **(ECF. 24, pp. 21-22)**; Ex. 1-3, Response to Interrogatory Nos. 16, 19 **(ECF 24-3, pp. 13-16)**.)

23.    On receiving and reading the MCM letter, Pritchett felt that MCM was trying to deceive her that she had not properly instructed MCM to not send her mail, had contacted her at her home anyway, all for the purpose of tricking or pressuring her into paying the debt and/or to contact MCM based on the instructions of the MCM letter.  (Ex. 1, Pritchett Dep. 44:23-45:12 **(ECF. 24, pp. 12-13)**, 82:3-13 **(ECF. 24, p. 22)**; Ex. X1-3, Response to Interrogatory Nos. 16, 19 **(ECF 24-3, pp. 13-16)**.)

24.    On receiving the letter Pritchett felt harassed, oppressed, and abused, stressed, and anxious by MCM because she had the expectation that it would not send her mail to her home because she had told MCM to not send her mail, but that MCM sent her mail anyway.  (Ex. 1, Pritchett Dep. 80:14-83:8 **(ECF. 24, pp. 21-22)**, 64:2-66:8 **(ECF. 24, p. 17-18)**; Ex. 1-3, Response to Interrogatory Nos. 16, 19 **(ECF 24-3, pp. 13-16)**.)

25.    The MCM letter made Pritchett's stress and anxieties worse and directly caused her stress and anxiety, describing it as a "pile-on effect" adding to the anxiety, inability to sleep, and anxiety, all of which interfered with and diminished her daily activities.  (Ex. 1, Pritchett Dep. 85:11-86:6 **(ECF. 24, p. 23)**, 86:22-88:13 **(ECF. 24, p. 23)**; Ex. 1-3, Response to Interrogatory Nos. 16, 19 **(ECF 24-3, pp. 13-16)**.)

## ARGUMENT AND RELEVANT LEGAL AUTHORITY

### I.    The MCM letter was sent in connection with the collection of a debt.

"In order to prevail on an FDCPA claim, a plaintiff must establish that: "(1) the plaintiff has been the object of collection activity arising from a consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in a prohibited act or

omission prohibited by the FDCPA." *Janke v. Wells Fargo and Co.*, 805 F. Supp. 2d 1278 (M.D. Ala. Aug. 22, 2011)(internal citations omitted).  Pritchett confirmed the debt allegedly owed to Midland was for personal, family, and household purposes because she used the account primarily to pay for her income tax.  Additionally, MCM does not contest that it was operating as a debt collector attempting to collect a consumer debt from Pritchett during the period of events which form the basis of this lawsuit.  As such, MCM was a "debt collector" as defined by § 1692a(6) of the FDCPA.  This satisfies prongs (1) and (2) to prevail on an FDCPA claim.

The FDCPA typically subjects debt collectors to liability even when violations are not knowing or intentional and has been described as "a strict liability statute".  *Owen v. I.C. System*, 629 F. 3d 1263, 1270-1271 (11th Cir. 2011)(citing *Leblanc v Unifund CCR Partners*, 601 F. 3d 1185 (11th Cir. 2010).  Consumer protection statutes must not only be interpreted liberally, they are also regarded as strict liability statutes.  *Agrelo v. Affinity Management Services, LLC*, 841 F.3d 944, 951 n.11 (11th Cir. 2016) ("*See Ellis v. Gen. Motors Acceptance Corp.* , 160 F.3d 703, 707 (11th Cir. 1998) (holding that a consumer protection statute "is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent"); *see also Brown v. Card Serv. Ctr.* , 464 F.3d 450, 453 (3d Cir. 2006) ("Because the FDCPA is a remedial statute, [courts] construe its language broadly, so as to effect its purpose." (internal citation omitted)).").

To be actionable under § 1692c of the FDCPA, a communication from a debt collector must be "...with a consumer in connection with the collection of any debt…"  As recently as 2022, the Eleventh Circuit in *Daniels v. Select Portfolio Servicing, Inc.*, 34 F. 4th (11th Cir. 2022) noted that "...the in connection requirement of the FDCPA… does not require that the communication itself be debt collection - **it only requires that the communication be 'related to debt collection**.'".  *Id.*, at 1272-73 (internal citations omitted)(Emphasis added). "A communication has

the necessary nexus to debt collection under the FDCPA if it 'conveys information about a debt and its aim is at least in part to induce the debtor to pay.'" *Lamirand v. Fay Servicing, LLC*, 38 F.4th 976, 979 (11th Cir. 2022)(Emphasis added)(internal citations omitted)(holding that the possibility that portions of the debt collector's letter were informational does not doom the consumer's argument that the letter was also a debt collection attempt governed by the FDCPA. *Lamirand*, at 980-81).

The Eleventh Circuit, in the case *Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551 (11th Cir. 2015)(unpublished), reviewed three different communications from a defendant debt collector, two of which it held *were* sent in connection with the collection of a debt under the FDCPA. *Id*. The court reversed the district court's adoption of the R&R granting a debt collector's FRCP 12(b)(6) motion to dismiss the FDCPA claims as to two of the letters while affirming dismissal of the FDCPA claims based on one other third letter. *Id*. The court considered critical distinctions in the content and purpose of the two letters which it held were collection letters versus the one non-collection letter in reaching its conclusions. The court's reasoning illustrates how the MCM letter is in connection with the collection of debt. *Id*., at 554.

*Pinson* relied on *Caceres v. McCalla Raymer, LLC*, to establish that, 1) a communication from a debt collector can serve multiple purposes, i.e, it can be both informational *and* it can be in connection with the collection of a debt, that being informational does not necessarily preclude it from being in connection with the collection of a debt, and 2) a demand for payment in the communication does not need to be express - the demand can be *implicit* to bring it within the purview of the FDCPA. *Pinson*, at 554. The court in *Pinson* stated:

> A communication can have more than one purpose, for example, providing information to a debtor as well collecting a debt. *Caceres*, 755 F.3d at 1302; *see also Reese*, 678 F.3d at 1217. **A demand for payment need not be express; there may be an implicit demand for payment where the letter states the amount of**

> **the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting a debt**. *Caceres*, 755 F.3d at 1303 & n.2.

*Pinson*, 618 F. App'x 551, 553-554 (11th Cir. 2015)(Emphasis added).

The court in *Pinson* held that a debt collector's communication was an implicit demand to pay a debt and, therefore, was in connection with the collection of a debt where the letter 1) stated the amount owed, 2) described how the debt could be paid, 3) provided an address where to send payment and telephone numbers, and 4) it expressly stated the purpose of the letter was to collect a debt. *Pinson*, 618 F. App'x at 554. There need not be an express, direct, or explicit demand for payment so long as these elements are present, especially within the context of the communication - the present context being a communication from MCM claiming to own a debt it alleges is owed by Pritchett sent to her while having engaged in collection attempts. *Id*.; *Daniels*, 34 F. 4th at 1268 (recognizing also that "the context of the communication matters."). And *Pinson* found this implicit demand existed despite the district court's finding that the letters' "animating purpose" was not an attempt to collect. *Id*., at 553.

The MCM letter contained all four of these *Pinson* elements. The MCM letter implicitly demanded payment where, per *Pinson*, it stated the balance of the debt and interest in numerous locations and directed Pritchett to the attachments showing these amounts. *Pinson*, at 554. The letter included an entire portion beginning with the express statement "Important Disclosure Information" along with the express statement to Pritchett that the letter 1) was from a debt collector, 2) was an attempt to collect a debt, and 3) any information obtained will be used for that purpose. Immediately following this disclosure, the letter provided all necessary account information of the debt the Plaintiff would need to identify the account prior to the portion directing Pritchett to "Send Payments To:" along with the mailing address and phone numbers (throughout)

to contact MCM quickly enabling her to make payment. The MCM letter checks every box for an implicit demand thereby making it in connection with the collection of a debt, thereby in turn bringing it within the enforcement purview of the FDCPA. *Id.*

In the recent district court decision *Kimberly Moss v. Midland Credit Mgmt., Inc.*, No. 1:24-cv-03180-TCB, (N.D. Ga. Dec. 24, 2024), the district court granted Midland's partial motion to dismiss finding that its letter to the consumer was not sent in connection with the collection of debt. Respectfully, however, the district court based this conclusion only by failing to properly account for the fact that Midland's letter contained an implicit demand as provided in *Pinson*. *Pinson*, 618 F. App'x at 553-554. Although *Pinson* held that the district court from which the case was appealed erred by overlooking these exact elements of an implicit demand, *Moss* essentially disregarded *Pinson*. *Pinson*, at 554 ("...these letters were communications sent in connection with the collection of a debt, and the District Court erred in dismissing Pinson's complaint in this respect." *Id.*)

*Moss* stated "The main element at issue is whether Moss was the object of debt collection at the time Midland sent the letter." *Id.*, at *8. While it is unclear from the record in *Moss*, Pritchett has shown she was the object of debt collection at the time MCM sent the letter. *Moss* then determined that Midland would not have sent its letter "*but for*" the Plaintiff having sent her letter first which somehow legally precluded any legal possibility that it was in connection with the collection of a debt. *Moss* at 9-10. While *Pinson* recognized that the one non-collection letter it reviewed was sent in response to the plaintiff's communication, *Pinson* never imposed or contemplated any "but for" threshold analysis. *Pinson*, 618 F. App'x 551. To the contrary, *Pinson* found that the purpose of the non-collection letter, to inform the plaintiff he had omitted an attachment, *taken together with **the lack of** other elements which Pinson held comprise an implicit demand*, led the *Pinson* court to conclude that that one non-collection letter was not in connection

with the collection of a debt. *Pinson*, at 553-554. This tells us that if this non-collection *did contain* the elements that comprise an implicit demand, then the outcome would be different, finding that it was sent in connection with the collection of the debt without regard to whether the letter was sent in response to, or "but for", the plaintiff having contacted the debt collector.

The court in *Moss* did not offer a robust discussion of the implicit demand elements enumerated in *Pinson* beyond simply saying its own "but for" question negated the presence of these implicit demand elements. *Moss*, at *9-10. But a "but for" limitation was simply never espoused by *Pinson* and, in fact, runs counter to what *Pinson* held - that a district court commits reversible error for dismissing a complaint when these implicit demand elements are present. *Pinson*, at 554. As such, this Court is respectfully counseled to not follow *Moss*.

## II.    MCM violated § 1692c(a)(1) of the FDCPA by sending mail to Pritchett's home address, a location which MCM knew or should have known was an inconvenient location.

§ 1692c(a)(1) of the FDCPA states that a debt collector may not communicate with a consumer in connection with the collection of any debt at "... a time or place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1). This § 1692c(a)(1) prohibition includes a debt collector's communication to a consumer's home when the debt collector knows communication to the home is inconvenient to the consumer and § 1692c(a)(1) places the burden on the debt collector to cease communications directed toward that home. 15 U.S.C. § 1692c(a)(1); *See Nieves v. Preferred Collection & Mgmt. Servs.*, 8:21-cv-1837-VMC-JSS, at *9 (M.D. Fla. Dec. 8, 2021)("Under section 1692c(a)(1) a consumer may request that debt collectors cease calling at any time or place known to be inconvenient including the consumer's home. Accordingly, § 1692c(a)(1) places the burden upon a debt collector to cease communicating with consumers at times and places known to be inconvenient.")(internal citations

omitted); *See Drew v. Mamaroneck Capital, LLC,* 2017 WL 4018854 (N.D. Ga., Sep. 12, 2017) (unpublished) (Finding plaintiff plausibly alleged debt collector violated § 1692c(a)(1) because it should have known her instructions to send only to one mailing address, a PO Box, meant that all other mailing addresses were inconvenient to her.)

Congress, through The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, transferred the express regulation and rulemaking authority which it granted in the FDCPA to the then newly formed Consumer Financial Protection Bureau (CFPB) to issue regulations, rules, orders, and guidance under the FDCPA. Regulation F, begun under President Obama, completed under President Trump, and then rolled out officially under President Biden, gives collectors many more communication options and explains the guardrails that debt collectors need to know to protect them from liability. As such, the CFPB issues regulations and guidance to clarify how debt collectors must comply with the FDCPA through Regulation F. Regulation F, 12 C.F.R. § 1006, *et seq.*; § 1006.1 "Authority, purpose, and coverage"; 12 U.S.C. § 5581(a)(1) (transferring all authority to "prescribe rules or issue orders or guidelines" pursuant to, inter alia, the FDCPA, including functions to "promulgate and review such rules, orders, and guidelines."; 15 U.S.C. § 1692l(a).)

Per Regulation F, physical mail is recognized as being associated with, or tied to, a location for FDCPA purposes. § 1006.6(b)(1)(ii). Pritchett's stated preference to MCM informing it that communications through the mail is inconvenient, therefore, has both a logical and a legal nexus to a physical location, Pritchett's home. This allows her express notice regarding the convenience of mail to invoke her § 1692c(a)(1) right as a preference regarding the convenience of the location tied to that mail. § 1006.6(b)(1)(ii) of Regulation F states:

> **Some communication media, such as mailing addresses and landline telephone numbers, <u>are associated with a place</u>.** Pursuant to § 1006.6(b)(1)(ii), a debt

collector must not communicate or attempt to communicate with a consumer through media associated with an unusual place, or with a place that the debt collector knows or should know is inconvenient to the consumer. **Other communication media, such as email addresses and mobile telephone numbers, are not associated with a place.** § 1006.6(b)(1)(ii) does not prohibit a debt collector from communicating or attempting to communicate with a consumer through such media unless the debt collector knows that the consumer is at an unusual place, or at a place that the collector knows or should know is inconvenient to the consumer.

§ 1006.6(b)(1)(ii) (Emphasis added).

Pritchett expressly notified MCM in her July 19, 2023, letter that she did not want mail from MCM because mail received by MCM was inconvenient. Her home address of 7664 Williams Creek Lane, Eight Mile, Alabama, 36613, was included in this letter. MCM had been communicating by written correspondence to this address as early as April 26, 2022, and as recently as its July 6, 2023, letter. MCM, after receiving her letter telling it that mail was inconvenient, knew, and at the very least should have known, that sending mail to her home address 7664 Williams Creek Lane, or to any address, was inconvenient and, thus, prohibited under § 1692c(a)(1). *Id.* But by July 31, 2023, MCM mailed a letter to Pritchett through the mail directly to the 7664 Williams Creek Lane home address.

MCM's sending this letter through the mail to her home address caused her mental anguish. She did not want mail sent to her home address for a number of reasons. Her adult children would often visit and retrieve the mail for her. They did not know about her financial situation and she preferred to keep it that way. By not receiving mail from MCM, she could avoid the possibility that her children would see debt collection mail and the understandable stress that would cause. Her husband had suffered an injury, was placed on leave, and at the time had no financial assistance for his injury. She wanted to avoid the possibility that he would see the mail and avoid the

understandable stress this would cause.  And, her neighbors sometimes received her mail and would open it. She wanted to avoid this from occurring again with debt collection mail.

Pritchett expressly told MCM not to send her documentation in the mail because doing so was not convenient to her.  The FDCPA associates mail with location, as anyone with the most basic understanding of how the U.S. Mail works would logically understand, and "Pursuant to § 1006.6(b)(1)(ii), a debt collector must not communicate or attempt to communicate with a consumer through media associated… with a place that the debt collector knows or should know is inconvenient to the consumer."  Reg F § 1006.6(b)(1)(ii).  MCM, having been told mail was inconvenient, and having used her home address to mail her collection attempts in several prior instances, knew, or at the very least should have known, that her home address was an inconvenient location.  But MCM sent her documentation through the mail to her home address anyway thereby violating § 1692c(a)(1).

### III.    MCM violated § 1692d of the FDCPA when it communicated with Pritchett through mail after Pritchett requested the MCM only use email and text to communicate with her.

§ 1692d prohibits debt collectors from taking actions that have the natural consequences of harassing, oppressing, or abusing consumers when attempting to collect debt. 15 U.S.C. § 1692d.  While § 1692d enumerates a *non-exhaustive* list of examples, Regulation F also provides additional examples of and guidance on prohibited conduct under § 1692d in paragraphs (b) through (h). 12 C.F.R. § 1006.14; § 1692d. Paragraph (h) specifically defines this harassment, oppression, and abuse as including:

> "(h)*Prohibited communication media* -(1) *In general.* In connection with the collection of any debt, a debt collector must not communicate or attempt to communicate with a person through a *medium* of communication if the person has requested that the debt collector not use that *medium* to communicate with the person."

12 C.F.R. § 1006.14(h)

Reg F. defines "communication" to mean "... the conveying of information regarding the debt directly or indirectly to any person through any medium." 12 C.F.R. § 1006.2.  And the "medium" which a person may request is specifically defined to include mail, email, and text. "Medium" is defined in Regulation F at 12 C.F.R. § 1006 app Supplement I to Part 1006 ("1. *Any medium.* Section 1006.2(d) provides, in relevant part, that a communication can occur through any medium. "Any medium" includes any oral, written, electronic, or other medium. For example, a communication may occur in person or by telephone, audio recording, paper document, mail, email, text message, social media, or other electronic media.")

Regulation F grants debt collectors, once practically limited to mail and telephones, broad abilities to use the many mediums of communications available now -  email, text, social media, etc.  To balance the access to these new and expanded communication media, the FDCPA, along with Reg F., rightly enables consumers a modicum of control over debt collectors who target and persist through mediums the consumer deems not suitable.  Consumers have a right to limit and restrict which mediums a debt collector may use. § 1692d; § 1006.14(h).  As such, FDCPA deems the natural consequence of a debt collector refusing to honor a consumer's requested medium as harassment, abuse, and oppression prohibited by § 1692d. *Id*.

Pritchett expressly told MCM that 1) she did not want any communication by mail, 2) the only convenient ways to communicate with her were by email or text and she only wanted MCM to communicate with her by email or text, and 3) that all other ways of communication were inconvenient.  MCM received this information and was bound to adhere to § 1692d and § 1006.14(h) to only contact her by email or text, and certainly not by mail.  In response, MCM

contacted her directly through mail.  It never attempted to email or text her.  In doing so, MCM violated § 1692d of the FDCPA.

"The Eleventh Circuit has indicated that 'claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse.'" *Blecher v. Central Credit Services, Inc.*, 2011 WL 13229642, at *4 (N.D. Ala. Jun. 22, 2011)(quoting *Jeter v. Credit Bureau,* 760 F. 2d 1168, 1179 (11th Cir. 1985)(holding that a consumer may be more susceptible due to circumstances because the consumer is poor or at "the mercy of a power relationship." *Id.*).)  Pritchett explained her circumstances in detail.  Her financial problems involved the loss of her husband's income because he was injured and placed on leave without income or compensation.  Her income had suffered during the period leading up to this when she was placed on leave due to COVID.  She was the only source of income.  She wanted to avoid having these financial troubles revealed and become stressful for her children and her husband, and ultimately for herself.  The prevention of debt collector mail from MCM to her home and the use of email and text were her efforts to avoid these stresses.  MCM harassed, abused, and oppressed her by refusing to honor her request and its obligation under the law, and by forcing a collection attempt on her causing her stress and anxiety, and making her circumstances worse.

**IV.    MCM violated § 1692e of the FDCPA when it misrepresented that she had inquired about the accuracy of her account and had requested documentation as a pretense to continue its debt collection efforts against her.**

§ 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of a debt.  15 U.S.C. § 1692e.  This statue provides a non-exhaustive list of examples of prohibited representations, including § 1692e(10) which clearly states that a debt collector violates the FDCPA when it uses "any false

representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer."

The Eleventh Circuit employs the "least sophisticated consumer" when determining whether a debt collector's conduct was false or misleading under section 1692e. *Leblanc*, 601 F. 3d at 1193, see also at 1201 (citing *Hartman v. Great Seneca Financial Corp*., 569 F. 3d 606 (6th Cir. 2009), as recognizing least sophisticated consumer standard to apply to § 1692e(10).)

> The gist of § 1692e is that "where some aspect of a debt collector's communication-whether explicit or implied-has the purpose or effect of making a debtor more likely to respond, the FDCPA requires that it be true." *Campuzano–Burgos v. Midland Credit Management,* 497 F.Supp.2d 660, 665 (E.D.Pa.2007). For purposes of a § 1692e claim, "[t]he question is not whether [plaintiff] was deceived, but whether the 'least sophisticated consumer' would have been deceived." *Jeter,* 760 F.2d at 1177 n. 11. "A debt collection practice may violate the FDCPA even if it does not fall within any of the enumerated circumstances set forth in Section 1692e." *Larsen v. JBC Legal Group, P.C.,* 533 F.Supp.2d 290, 299 (E.D.N.Y.2008).

*Sparks v. Phillips & Cohen Asscs., Ltd*, 641 F. Supp. 2d 1234, 1248 (N.D. Ala. Jun. 20, 2008)

A court may determine that a debt collector violates § 1692e(10) as a matter of law when there is no "reasonable" inference that could be drawn that the content in question in a debt collector's letter <u>would not</u> violate § 1692e(10). *Kuehn v, Cadle Co., Inc.*, 335 Fed. Appx. 827, 830, 2009 WL 1606868, at *2 (11ith Cir. 2009) (Unpublished) (clarifying the holding in *Jeter*, 760 F. 2d 1168.) In other words, if the court is not presented with a reasonable inference of how the statement could be true, then the debt collector has violated § 1692e(10) as a matter of law and summary judgment would be proper.

MCM used false, deceptive, and misleading representations in the MCM letter when it misrepresented and mischaracterized what Pritchett stated in her July 19, 2023, letter.  First, the MCM letter misrepresented that Pritchett requested about the accuracy of her account.  She made no such request.  To the contrary, she stated she did not want information about the account and

that she was not asking for validation or verification.  In no way did she seek or request information about the accuracy of the account.  Secondly, the MCM letter misrepresented that Pritchett requested documentation of the account and attached account statements to her account.  Again, Pritchett did no such thing, telling MCM directly that she did not want documentation sent to her.

These misrepresentations were false, deceptive, and misleading pretenses to allow MCM to continue to communicate with her for the overall purpose and effect being to make Pritchett more likely to respond, to contact MCM, and to make payment.  As such, these representations were required to be true.  *Campuzano–Burgos*, at 665; § 1692e(10).  That these misrepresentations were compounded with MCM's failure to adhere to § 1692c(a)(1) and § 1692d further illustrates the falsity of these pretenses.  There is no "reasonable" inference that can be drawn from these misrepresentations, being completely counter to the truth, that somehow makes them truthful.  The MCM letter, as such, violates § 1692e(10) as a matter of law.  *Kuehn v, Cadle Co., Inc.*, at 830.

## CONCLUSION

The FDCPA is regarded as a strict liability statute and Pritchett does not need to show this Court that MCM acted knowingly or intentionally to commit these violations.  There are no genuine disputes as to any material facts that MCM's letter contained all the elements of an implicit demand thereby making it in connection with the collection of a debt, that MCM contacted Pritchett at a location which it knew was inconvenient for her, that it communicated with her through a medium which it knew was not convenient to her, and that MCM used untruthful representations in its attempt to collect the debt from her.  As such, summary judgment in favor of the Plaintiff is due to be granted as to these findings.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff respectfully requests that this honorable Court grant plaintiff's Motion for Partial Summary Judgment finding that the Defendant

violated § 1692c(a)(1), § 1692d, and § 1692e, and proceed to jury trial on damages and on the

Plaintiff's remaining claims against the Defendant.

Respectfully Submitted,

*/s/ W. James Sears*
**W. James Sears**
**John G. Watts**
**M. Stan Herring**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
james@wattsherring.com
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **January 6, 2024**, I served the foregoing via electronic mail and/or by placing a copy in the U.S. mail, postage prepaid and properly addressed, to the following counsel of record:

Jason B. Tompkins
Thomas R. DeBray, Jr.
Connor W. Herfurth
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

*<u>/s/ W. James Sears</u>*
Of Counsel