FILED
2025 Jan-27  PM 08:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **Robbin Pritchett,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:23-cv-01365-RDP** |
| ) | |
| **Midland Credit Management, Inc.;** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S**
**RESPONSE IN OPPOSITION TO PLAINTIFF ROBBIN PRITCHETT'S**
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

Respectfully submitted,

Jason B. Tompkins
Thomas R. DeBray, Jr.
Connor W. Herfurth
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203

*Counsel for Defendant*

Plaintiff Robbin Pritchett ("Pritchett") argues that she is entitled to summary judgment, only leaving the issue of damages to a jury, on her manufactured Fair Debt Collection Practices Act ("FDCPA") count brought against Defendant Midland Credit Management, Inc. ("Midland").[1] As set forth in Midland's presently pending motion for summary judgment and related filings,[2] and as reiterated herein, Pritchett's FDCPA count lacks merit and her motion for partial summary judgment should be denied.  In fact, federal courts throughout the country have concluded that Midland's conduct at issue—*i.e.*, the mailing of a response letter to Pritchett after receipt of Pritchett's prior letter wherein she disputed any and all debts and requested that Midland communicate with her only by text or email—does not violate the FDCPA,[3] thus rendering Pritchett's dispositive motion a non-starter.  In response in opposition to Pritchett's motion for partial summary judgment, Midland further states as follows:

### Midland's Responses to Pritchett's "Statement of Undisputed Facts"

1.      Midland does not dispute this fact.

2.      Midland does not dispute this fact.[4]

3.      Midland does not dispute this fact.

4.      Midland does not dispute this fact.

5.      Midland does not dispute this fact.

6.      Midland does not dispute this fact.

---

[1] *See* Doc. 29; Doc. 30; *see also* Doc. 1 at p. 13, ¶¶ 23-24.

[2] *See* Doc. 26; Doc. 27; Doc. 27-1; Doc. 27-2; Doc. 27-3; Doc. 28.

[3] *See, e.g.*, *Moss v. Midland Credit Mgmt., Inc.*, Order (Doc. 20), No. 1:24-cv-03180-TCB-CMS (N.D. Ga. Dec. 31, 2024); Doc. 26 at p. 2, fn.5 (citing cases).

[4] However, Midland notes that, during her deposition, Pritchett testified that she first became aware of Midland when she received a letter from Midland dated July 6, 2023, and that she does not recall having received any letter from Midland during the 2022 calendar year.  *See* Doc. 27-1 at p. 8 (30:9-31:2).

7.    Midland does not dispute that this paragraph accurately reflects the cited portion of Pritchett's deposition testimony, but Midland notes that Pritchett's stated expectation[5] is immaterial.

8.    Midland disputes that receiving mail was inconvenient for Pritchett—indeed, she does not consider receiving "mail" itself to be inconvenient; rather, her alleged inconvenience is based on the potential content of a piece of mail:

> Q:    So my question now is, it is not the mail that was inconvenient; it was the content of what was in the letter from Midland that was inconvenient?
>
> [. . .]
>
> A:    Yes, it is inconvenient to get that type of mail.
>
> Q:    But not the mail in general?
>
> A:    No, not junk mail or your light bill or water bill, no.

Doc. 27-1 at p. 12 (48:3-14) (Pritchett's counsel's form objection omitted); *see id.* at p. 10 (40:12-16) ("Q: Ms. Pritchett, do you—how do you get your power bill?  A: In the mail.  Q: Is that inconvenient for you?  A: No.  Everybody gets a power bill."); *id.* at p. 11 (41:18-42:1) ("Q: So what makes something inconvenient for you isn't necessarily . . . getting the letter; it is that it is what you have described as financial information?  A: Correct.  Correct.") (Pritchett's counsel form objection omitted); *id.* at p. 12 (47:21-48:2).

9.    Midland does not dispute that this paragraph accurately reflects the cited portions of Pritchett's deposition testimony, but this paragraph is immaterial.

10.    Midland does not dispute that this paragraph accurately reflects the cited portion of Pritchett's deposition testimony, but this paragraph is immaterial.

---

[5] *See* Doc. 30 at p. 6, ¶ 7.

11.    Midland does not dispute this fact.

12.    Midland does not dispute this fact.

13.    Midland does not dispute this fact.

14.    Midland does not dispute this fact.

15.    Midland does not dispute this fact.

16.    Midland does not dispute that this paragraph accurately quotes a portion of Midland's letter to Pritchett.[6]

17.    Midland does not dispute this paragraph's statements regarding the amounts and "locations" of the balance and interest, but Midland disputes any characterization of Pritchett that the account statement constitutes a portion of Midland's actual letter to Pritchett; the account statement, which was generated previously by the original creditor that issued Pritchett's underlying account to her, was appended to Midland's letter.[7]

18.    Midland does not dispute that this paragraph accurately quotes a portion of Midland's letter to Pritchett, but said quoted portion does not speak to "Midland's . . . ownership" or "right to collect the debt from Pritchett[.]"[8]

19.    Midland does not dispute that its letter included telephone numbers at which it could be contacted, but Midland disputes any characterization of Pritchett that any such telephone number concerned or related to any ability of Pritchett to make a payment on the debt.[9] Pritchett has cited no evidence that employees at those numbers are authorized to accept payments.

---

[6] The citation supplied by Pritchett is incorrect; the correct citation is Doc. 24-21 at p. 2.

[7] *See* Doc. 27-2 at pp. 50-51.

[8] Doc. 30 at p. 8, ¶ 18.

[9] *See id.* at p. 9, ¶ 19.

3

20.    Midland does not dispute that this paragraph accurately quotes a portion of Midland's letter to Pritchett, but Midland disputes the commentary offered by Pritchett in regard to the same.[10]

21.    Midland does not dispute this fact.

22.    Midland does not dispute that this paragraph accurately reflects the cited portions of Pritchett's deposition testimony and discovery responses, but this paragraph is immaterial.

23.    Midland does not dispute that this paragraph accurately reflects the cited portions of Pritchett's deposition testimony and discovery responses, but this paragraph is immaterial.

24.    Midland does not dispute that this paragraph accurately reflects the cited portions of Pritchett's deposition testimony and discovery responses, but this paragraph is immaterial.

25.    Midland does not dispute that this paragraph accurately reflects the cited portions of Pritchett's deposition testimony and discovery responses, but this paragraph is immaterial.

### Midland's Statement of Indisputable, Relevant, Material Facts

To avoid needles duplication, Midland refers to, incorporates, and reasserts its "Statement of Indisputable, Relevant, Material Facts" set forth in its brief in support of its motion for summary judgment.[11]

### Midland's Responsive Argument

**I.    Pritchett is not entitled to summary judgment in her favor on her section 1692c claim.**

Pritchett claims that she is entitled to summary judgment on her section 1692c claim for two purported reasons: i) Midland's response letter to her was sent "in connection with the

---

[10] *Id.* at p. 9, ¶ 20.

[11] *See* Doc. 28 at pp. 3-11, ¶¶ 1-23.

collection of a debt[;]"[12] and ii) Midland's letter was sent "to Pritchett's home address, a location which [Midland] knew or should have known was an inconvenient location."[13]   However, as explained below, neither of Pritchett's arguments carries the day.

<u>In Connection with the Collection of a Debt</u>

Not only is Pritchett not entitled to summary judgment on her section 1692c claim, but her claim actually fails as a matter of law because an objective, holistic review of Midland's response letter reveals it was not sent "in connection with the collection of any debt"—an essential element of any claim brought under the FDCPA.  *See, e.g. Mathieson v. Wells Fargo Bank, NA*, 524 F.Supp. 3d 1246, 1253 (M.D. Fla. 2021) (quotation omitted).  "[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor."  *Parker v. Midland Credit Mgmt., Inc.*, 874 F.Supp. 2d 1353, 1357 (M.D. Fla. 2012) (quotation omitted).  To ascertain the animating purpose, courts should "look to the language of the correspondence in question—specifically to statements that demand payment and discuss additional fees if payment is not tendered."  *Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 801 (11th Cir. 2016).

A review of each of the four cases upon which Pritchett relies in supposed support of her "in connection with the collection of a debt" argument[14] reveals that Midland's letter is **markedly distinguishable** from those epistles found to be covered by the FDCPA:

---

[12] Doc. 30 at p. 10; *see id.* at pp. 11-15.

[13] Doc. 30 at p. 15; *see id.* at pp. 16-18.

[14] *See* Doc. 30 at pp. 11-15.

| Case | Why the FDCPA Applied |
|---|---|
| *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260 (11th Cir. 2022) | The "statements attached a **monthly payment coupon** . . . [and] **included late fee information** and instructed [the plaintiff] to '[p]lease detach bottom portion and return with your payment' and '[m]ake checks payable to [the defendant].'" 34 F.4th at 1268 (emphasis added). |
| *Lamirand v. Fay Servicing, LLC*, 38 F.4th 976 (11th Cir. 2022) | The defendant's "mortgage statement[s] notif[ied the plaintiffs] that their loan had 'been accelerated' because they were 'late on [their] monthly payments[, warned them that i]f they did not pay, . . . they **risked more fees and even 'the loss of [their] home to a foreclosure sale'**[, and] then detailed many—many—ways that the [plaintiffs] might pay." 38 F.4th at 978 (emphasis added). |
| *Pinson v. Albertelli Law Partners, LLC*, 618 F. App'x 551 (11th Cir. 2015)[15] | One letter "stated that **fees and costs would continue to be assessed until the loan delinquency was cured**, and the other stated that **the amount owed would continue to increase if [the plaintiff] failed to reinstate the loan immediately**." 618 F. App'x at 554 (emphasis added). |
| *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299 (11th Cir. 2013) | "[I]t refers in two additional paragraphs to 'collection efforts;' it states that collections efforts will continue and that **additional attorneys' fees and costs will accrue**; . . . and [it] indicates that [the debt] **must be paid in certified funds**[.]" 755 F.3d at 1303 (emphasis added). |

In contrast to the above, Midland's letter to Pritchett neither demands payment nor contains any discussion regarding "terms of payment or deadlines." *Heagerty v. AMIP Mgmt., LLC*, No. 1:20-cv-02727-SCJ-RGV, 2021 WL 2587720, at *10 (N.D. Ga. Apr. 20, 2021) (quotation omitted), *adopted by* 2021 WL 7708403 (N.D. Ga. May 12, 2021) (dismissing the plaintiff's amended complaint alleging violations of the FDCPA).[16] *See also, e.g.*, *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015) (holding that "the 'animating purpose' of the [defendant-servicer's] letter was . . . not to induce [the plaintiff] to resume payments on her defaulted

---

[15] In the memorandum in support of her motion for partial summary judgment, Pritchett includes a quotation from the *Pinson* case that cites *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012). *See* Doc. 30 at p. 12. However, the *Reese* case is likewise readily distinguishable. *See* 678 F.3d at 1216-17 (noting that the defendant-debt collector's subject letter **demanded full and immediate payment and threatened collection and attorney's fees if the full payment was not paid by the plaintiff-consumer**).

[16] *Cf.* Doc. 27-2 at pp. 47-48.

mortgage") (affirming judgment in favor of the defendant on the plaintiff's FDCPA claim). Midland's response letter to Pritchett does not threaten litigation or the imposition of attorneys' fees, and it does not indicate "that any punitive actions would be taken if [Pritchett] failed to make payments" to Midland.[17]  *Farquharson*, 664 F. App'x at 801 (affirming dismissal of the plaintiffs' FDCPA claim).  *See, e.g.*, *Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998) (holding that defendant's letter at issue was not made "in connection with the collection of any debt" because the letter "demands nothing and doesn't even imply that anything owed under the [plaintiffs'] forbearance agreement is overdue").

In fact, the Northern District of Georgia recently dismissed a plaintiff's FDCPA claims—including a section 1692c claim—that were based on a response letter from Midland that is **<u>nearly identical to the underlying response letter sent by Midland to Pritchett</u>**[18] "because Midland's letter was not sent in connection with either an implicit or explicit demand for the collection of any debt, and therefore the letter cannot support a claim under the FDCPA."  *Moss*, Order (Doc. 20 at p. 11), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Dec. 31, 2024).[19]  In the memorandum in support of her motion for partial summary judgment, Pritchett argues that the *Moss* court did not "properly account for the fact that Midland's letter [to the plaintiff] contained an implicit demand as provided in *Pinson*."[20]  However, the federal district court in *Moss* correctly noted what is set

---

[17] *Cf.* Doc 27-2 at pp. 47-48.

[18] *Cf. Moss*, Ex. B to Def. Midland Credit Mgmt., Inc.'s Mot. to Dismiss Am. Compl. and Br. in Support (Doc. 10-2 at pp. 2-3), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Aug. 30, 2024), *with* Doc. 27-2 at pp. 47-48.

[19] *See also Duarte v. Midland Funding, LLC*, No. 17 C 5061, 2019 WL 978495, at *2-3 (N.D. Ill. Feb. 27, 2019) (reciting the relevant wording of Midland's response letter to the plaintiff and in turn holding that such letter did not constitute "a communication in connection with the collection of a debt"); *cf.* Doc. 27-2 at p. 47.

[20] Doc. 30 at p. 14; *see id.* at p. 15.

forth above—*i.e.*, unlike the letters found to be "communications sent in connection with the collection of a debt" in *Pinson*,[21] Midland's letter to the plaintiff did not "make any statements about what additional fees will be assessed if payment is not tendered." *Moss*, Order (Doc. 20 at p. 10), No. 1:24-cv-03180-TCB-CMS (N.D. Ga. Dec. 31, 2024); *see id.* ("Although [Midland's] letter does provide information about [the plaintiff]'s debt, it does not demand payment, **either explicitly or implicitly**.") (emphasis added). Moreover, "Midland would not have sent the [r]esponse [l]etter to Pritchett had Midland not previously received Pritchett's [d]ispute [l]etter."[22] As such, Midland's letter to Pritchett "essentially amounted to nothing more than an acknowledgement of [Pritchett]'s earlier letter[;]"[23] thus, it "cannot be alleged plausibly that [Midland]'s letter was sent in connection with the collection of debt." *Williams v. Resurgent Cap. Servs., L.P.*, No. 24 C 1351, 2024 WL 3226634, at *2-3 (N.D. Ill. June 28, 2024).

Pritchett relatedly contends that the disclosure sheet in Midland's response letter to her indicates that Midland's letter was made "in connection with the collection of a debt."[24] However, the only case cited by Pritchett in support of this contention is the *Pinson* case.[25] There, though, the court found that two of the defendant's letters sent to the plaintiff were "sent in connection with the collection of a debt" where one of the letters stated "that fees and costs would continue to be assessed until the loan delinquency was cured, and the other stated that the amount owed would continue to increase if [the plaintiff] failed to reinstate the loan immediately." *Pinson*, 618 F. App'x at 554. Here, by contrast, Midland's underlying letter to Pritchett says nothing about the

---

[21] 618 F. App'x at 554.

[22] Doc. 27-2 at p. 4, ¶ 12.

[23] *See* Doc. 27-2 at p. 47.

[24] Doc. 30 at p. 14; *see id.* at p. 13.

[25] *Id.* at pp. 14-15.

continued assessment of fees, costs, or penalties.[26]  *Compare Daniels*, 34 F.4th at 1268 ("Viewed holistically, a communication that expressly states that it is 'an attempt to collect a debt,' **that asks for payment of a certain amount by a certain date**, **and that provides for a late fee if the payment is not made on time** is plausibly 'related to debt collection.'") (quoting *Reese*, 678 F.3d at 1217) (emphases added), *with, e.g., Grden v. Leikin Ingber & Winters PC,* 643 F. 3d 169, 173 (6th Cir. 2011) (noting that the subject statements "did not demand payment or threaten any consequences if [the debtor] did not pay"), *and Helman v. Udren Law Offices, P.C.,* 85 F.Supp. 3d 1319, 1326 (S.D. Fla. 2014) (denoting that the subject letter did "not demand payment," "deliver an ultimatum[,] or establish an arbitrary deadline").

Viewing the entire context of Midland's letter reveals that its boilerplate disclaimers fall well short of transforming Midland's ministerial response to Pritchett's dispute letter into debt collection activity.  *See, e.g.*, *Muller v. Midland Funding, LLC*, No. 14-cv-81117-KAM, 2015 WL 2412361, at *5 (S.D. Fla. May 20, 2015) (noting that "**the disclosure of these addresses [to where payments should be sent]** does not indicate that the [defendant's l]etter's overall purpose was to induce an immediate payment rather than to inform [the p]laintiff where payments should eventually be sent") (granting in part the defendant's motion to dismiss) (emphasis added); *Moss*, Order (Doc. 20 at p. 10), No. 1:24-cv-03180-TCB-CMS (N.D. Ga. Dec. 31, 2024) (ruling that "the disclosure information on the back of [Midland's response] letter [to the plaintiff], **which includes a notice stating that the letter 'is an attempt to collect a debt' and provides methods for sending payments** . . . is not determinative") (dismissing the plaintiff's FDCPA claims in a

---

[26] *See* Doc. 27-2 at pp. 47-48.

substantively indistinguishable case) (emphasis added).[27]  Accordingly, Pritchett is not entitled to summary judgment in her favor on her 1692c claim.

<u>Inconvenient Location</u>

The plain text of section 1692c of the FDCPA only prohibits communications at inconvenient times and places; it "does not require that the debt collector comply with [a p]laintiff's preferences" for a medium of communication.  *White v. LVNV Funding, LLC*, No. 2:24-cv-00140-CDS-BNW, 2024 WL 365404, at *2 (D. Nev. Jan. 30, 2024).  Nonetheless, Pritchett argues that section 1692c(a)(1) prohibits "a debt collector's communication to a consumer's home when the debt collector knows communication to the home is inconvenient to the consumer" and "places the burden on the debt collector to cease communications directed toward that home."[28] As supposed support for her argument, Pritchett cites *Nieves v. Preferred Collection & Management Services, Inc.*, No. 8:21-cv-1837-WMC-JSS, 2021 WL 5826190 (M.D. Fla. Dec. 8, 2021), and *Drew v. Mamaroneck Capital, LLC*, No. 5:17-CV-149 (MTT), 2017 WL 4018854 (M.D. Ga. Sept. 12, 2017).[29]

However, neither *Nieves* nor *Drew* involves the entry of summary judgment in favor of a plaintiff-consumer and, in any event, both of those cases are readily distinguishable from this action.  For example, the section 1692c(a)(1) claim at issue in *Nieves* was based on a debt collector's repeated and unwanted telephone calls—not a lone letter mailed to a consumer in

---

[27] *See, e.g.*, *Martinez v. McCalla Raymer, LLC*, No. 1:11-cv-1513-TCB-ECS, 2011 WL 13319302, at *2 (N.D. Ga. Sept. 29, 2011) (determining the plain language of the defendant's letter to the plaintiff "support[ed] the finding that [d]efendant was not engaging in 'debt collection' under the FDCPA **even though the defendant's letter contained language stating that it was "an attempt to collect a debt"**) (emphasis added), *adopted by* 2011 WL 13319301 (N.D. Ga. Oct. 31, 2011).

[28] Doc. 30 at p. 15.

[29] *See* Doc. 30 at pp. 15-16.

response to a dispute.  *See Nieves*, 2021 WL 5826190, at *4 (noting that the plaintiff alleged the defendant "made numerous calls to him after his request that all calls cease").  Furthermore, the *Nieves* plaintiff's section 1692c claim had nothing to do with "a debt collector's communication to a consumer's home"[30]—rather, the plaintiff alleged that the defendant made numerous "'collection calls to [his] cellular phone.'" 2021 WL 5826190, at *1 (quoting the plaintiff's complaint) (bracketed text supplied by court).[31]  In *Drew*, the plaintiff alleged that the defendant-debt collector violated section 1692c of the FDCPA by sending a responsive letter to the knowingly wrong address—*i.e.*, an address in a different city.  *See Drew*, 2017 WL 4018854, at *3 (denoting that the plaintiff "expressly requested the Defendants to send future communication to the Rochelle[, Georgia] address, but the Defendants ignored her request and still sent their response letter to an address in Pitts, Georgia.").  Here, no such alleged fact is at issue.  In fact, Pritchett does not actually characterize receiving "mail" itself to be inconvenient; instead, her purported inconvenience concerns the potential content of a piece of mail.[32]  Pritchett admits that receiving

---

[30] Doc. 30 at p. 15.

[31] Although not divulged by Pritchett in the memorandum in support of her motion for partial summary judgment (*compare* Doc. 30 at pp. 15-16), the portion of the *Nieves* opinion cited by Pritchett is a quotation of *Shand-Pistilli v. Professional Account Services, Inc.*, No. 10-cv-1808, 2010 WL 2978029 (E.D. Pa. July 26, 2010).  *Cf.* Doc. 30 at p. 15, *with Shand-Pistilli*, 2010 WL 2978029, at *3.  And similar to *Nieves*, the section 1692c(a)(1) claim asserted in *Shand-Pistilli* concerned the plaintiff's allegation "that she asked [the] defendant to cease calling, but the calls persisted[.]"  2010 WL 2978029, at *3.  Moreover, the only section 1692c claim that the *Shand-Pistilli* court did not dismiss was a section 1692c(b) claim based on the plaintiff's averment that the "defendant contacted her employer" and "indirectly convey[ed] the existence of [the] plaintiff's debt when asking about [the] plaintiff's current employment status."  2010 WL 2978029, at *4.

[32] *See* Doc. 27-1 at p. 12 (48:3-14) ("Q: So my question now is, it is not the mail that was inconvenient; it was the content of what was in the letter from Midland that was inconvenient? . . . A: Yes, it is inconvenient to get that type of mail.  **Q: But not the mail in general?  A: No, not junk mail or your light bill or water bill, no.**") (Pritchett's counsel's form objection omitted) (emphasis added); *see also id.* at p. 11 (41:18-42:1).

her "power bill" via the mail does not cause her any inconvenience, and she likewise disclaims any inconvenience associated with the "time" at which she receives her mail.[33]  And her dispute letter to Midland did not state that receiving email or text messages at her home was inconvenient, and it actually stated that text and email communications *were* convenient.[34]

On this "inconvenient location" front, the case of *Lusk v. Midland Credit Management, Inc.*, No. CIV-24-381-R, 2024 WL 4171355 (W.D. Okla. Sept. 12, 2024), is instructive.  There, the plaintiff alleged that Midland "had constructive notice that her home was an inconvenient 'place' for communication, and thus the second dunning letter was sent [by Midland] in violation of the [FDCPA]." 2024 WL 4171355, at *2.  The *Lusk* court, however, rejected the plaintiff's argument because she was not "empowered [by the FDCPA] to limit [Midland] to only communicating with her by email." *Id.* at *3; *see id.* ("And while it is true that [the plaintiff]'s letter implies that her home is an inconvenient place for [Midland] to send communications, it also implies that everywhere that is not her email is similarly inconvenient.  This preference goes beyond what the statute enables consumers to restrict.") (granting Midland's motion to dismiss).  Simply put, Pritchett is not entitled to summary judgment in her favor on her section 1692c claim.  Quite the opposite, her claim actually fails as a matter of law because mail, email, and text messages are *media* of communication, not *times* or *places*—and neither section 1692c nor any other section of the FDCPA speaks to the medium or method by which a debt collector may communicate with a consumer.  *See, e.g.*, 15 U.S.C. § 1692c.  Because Pritchett's dispute letter to

---

[33] *See* Doc. 27-1 at p. 10 (40:12-16); *id.* at p. 12 (47:21-48:2) ("Q: At any point during the day, if you got the mail at noon or at 5:00 or at 8:00, would you say that that is inconvenient?  **A: I guess it would not be inconvenient**, because you have got to get mail.") (emphasis added).

[34] *See* Doc. 27-2 at p. 46; *cf.* Doc. 27-1 at p. 16 (63:1-9) ("Q: . . . The July 31st letter [from Midland] that is made the basis of this lawsuit, do you believe or think had you gotten this in an email as opposed to a hard copy in the mail you wouldn't have suffered anxiety?  A: I really don't know.").

Midland does not posit "that [she] would find receiving an email at her home at the same time she received [Midland's] letter would be inconvenient[,]" her "dispute is with the medium of communication, not the time or place of receiving the communication[,]" and her section 1692c claim thus fails. *Kirk v. Credit Mgmt. L.P.*, No. 2:23-cv-482-ECM, 2024 WL 3240564, at *2 (M.D. Ala. June 28, 2024). *See, e.g.*, *Marks v. Javitch Block LLC*, No. 1:23-cv-431-MJT-CLS, 2024 WL 1134037, at *2 (E.D. Tex. Mar. 14, 2024) (dismissing the plaintiff's argument that **"[t]he physical nature of the mail intruded into [his] personal and private space in a manner that electronics communications do not"**) (quotation omitted) (bracketed text supplied by court) (emphasis added).[35]

Pritchett relies exclusively on the Consumer Financial Protection Bureau's ("CFPB") "Regulation F" for the remainder of her "inconvenient location" summary judgment argument.[36] Even putting aside the fact that an alleged violation of Regulation F does not "provide for a private cause of action[,]"[37] the CFPB's interpretation of the FDCPA holds no sway over a federal district court:

> In support of its Motion, TrueAccord relies on the Consumer Financial Protection Bureau's ("CFPB") official interpretation of the timing of debt-collection electronic communications. . . . While the CFPB interpretation may have some appeal (on policy grounds), **I am neither bound by it nor required to defer to it**. *See generally Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron USA, Inc. v. Nat'l Res. Defense Council*, 467 U.S. 837 (1984)). **"It is emphatically the province and duty of the judicial department to say**

---

[35] *See also Harris v. Transworld Sys., Inc.*, No. 1:23-cv-5253-MLB-JKL, 2024 WL 4649238, at *4 (N.D. Ga. Sept. 11, 2024) (rejecting the plaintiff's "effort to shoehorn his claim into § 1692c(a)(1)" via arguing "by assertion that **any mail sent to [his] residence is inherently inconvenient and in violation of the statute**") (quotation omitted) (bracketed text supplied by court) (emphasis added).

[36] *See* Doc. 30 at pp. 16-18.

[37] *Doss v. Citizens Sav. & Trust Co.*, No. 3:19-0265, 2020 WL 9935823, at *4 (M.D. Tenn. Jan. 3, 2020), *report and recommendation adopted*, 2020 WL 13644756 (M.D. Tenn. Feb. 26, 2020).

**what the law is."** *Loper*, 144 S.Ct. at 2257 (citing *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)).

*Nina Quinn-Davis v. Trueaccord Corp.*, No. 1:23-cv-23590-LEIBOWITZ/REID, 2024 WL 4851344, at *5 (S.D. Fla. Nov. 20, 2024) (emphases added). In turn, federal courts throughout the country already have said **"what the law is"**—*i.e.*, "[e]very court to address the issue has held . . . that a consumer's preference for email communication concerns the ***medium*** of communication—as opposed to the ***time*** or ***place*** of the communication—and therefore falls outside the scope of § 1692c(a)(1)." *Harris*, 2024 WL 4649238, at *3 (citing *Ford v. Midland Credit Mgmt., Inc.*, No. 3:23-cv-00213-TCB-RGV, 2024 WL 3813750, at *3 (N.D. Ga. July 8, 2024); *Marks*, 2024 WL 1134037; *Kirk*, 2024 WL 3240564, at *2; *White*, 2024 WL 365404, at *2) (emphases in original).

In *Moss*, the plaintiff sent an analogously worded underlying dispute letter to Midland—which included a similar statement that "receiving mail from [Midland] . . . is inconvenient to [the plaintiff]."[38] And just like the plaintiff in *Moss*, Pritchett has provided "no support for her proposition that Regulation F must be considered." *Moss*, Order (Doc. 20 at p. 12), No. 1:24-cv-03180-TCB-CMS (N.D. Ga. Dec. 31, 2024). But "[e]ven if the Court [were to] consider[] the regulation, the outcome is the same. . . . Regulation F discusses a 'situation where the debtor has told the debt collector not to contact her at a specific place, and the question is what communication media are still available to the debt collector.' That is not the situation we have here." *Id.* at Order (Doc. 20 at p. 13), No. 1:24-cv-03180-TCB-CMS (N.D. Ga. Dec. 31, 2024) (quoting the record) (dismissing the plaintiff's substantively analogous section 1692c claim).

---

[38] *Moss*, Ex. A to Def. Midland Credit Mgmt., Inc.'s Mot. to Dismiss Am. Compl. and Br. in Support (Doc. 10-1 at p. 2), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Aug. 30, 2024); *cf.* Doc. 27-2 at p. 46.

Pritchett has not met—and, indeed, cannot meet—her burden of showing that she "is entitled to judgment as a matter of law" on her section 1692c claim. Fed. R. Civ. P. 56. As such, in regard to her section 1692c claim, Pritchett's motion for partial summary judgment should be denied.

## II. Pritchett is not entitled to summary judgment in her favor on her section 1692d claim.

Section 1692d of the FDCPA prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Pritchett asserts that she "expressly told [Midland] that 1) she did not want any communication by mail, 2) the only convenient ways to communicate with her were by email or text and she only wanted [Midland] to communicate with her by email or text, and 3) that all other ways of communication were inconvenient."[39] In turn, Pritchett contends that Midland violated section 1692d of the FDCPA when it "contacted her directly through mail[,]"[40] and she relies on Regulation F as supposed support for her contention.[41]

As an initial matter, not only is Pritchett not entitled to summary judgment in her favor on her section 1692d claim, but for the reasons discussed above, her claim actually fails as a matter of law because Midland's transmittal of its underlying response letter does not constitute conduct pursued "in connection with the collection of any debt." *E.g., Mathieson*, 524 F.Supp. 3d at 1253 (recognizing that the FDCPA does not apply to a debt collector's communication unless the communication was made "in connection with the collection of any debt") (quotation omitted). Additionally, Pritchett's reliance on Regulation F is a non-starter. *See, e.g., Doss*, 2020 WL

---

[39] Doc. 30 at p. 19.

[40] *Id.* at p. 20.

[41] *See* Doc. 30 at pp. 18-20.

9935823, at *4, *report and recommendation adopted*, 2020 WL 13644756; *Nina Quinn-Davis*, 2024 WL 4851344, at *5.[42]  Moreover, receiving a single, informational letter "is not comparable to the conduct that courts have found to give rise to liability under [section 1692d of] the statute." *Moss*, Order (Doc. 20 at p. 14, fn.7), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Dec. 31, 2024) (dismissing the plaintiff's section 1692d claim based on a substantively identical response letter sent by Midland).

Further, Midland's letter does not evidence any intent to harass, oppress, or abuse Pritchett, or suggest any tone of intimidation.  Rather, "[i]t is evident that even viewed through the generous lens of a susceptible consumer, sending a letter with information about [Pritchett's] debt—while not asking for any payment, not threatening any consequences for failing to pay, and expressly indicating [that Midland] will [adhere to Pritchett's communication preferences going forward]— does not manifest a tone of intimidation." *Moss*, Non-Final Rpt. and Recommendation (Doc. 13 at p. 13), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Oct. 15, 2024) (recommending the dismissal of a substantively analogous section 1692d claim), *adopted by Moss*, Order, (Doc. 20 at pp. 13-15), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Dec. 31, 2024) (dismissing the plaintiff's section 1692d claim).  *See also, e.g.*, *Gallagher v. Gurstel, Staloch & Chargo, P.A.*, 645 F.Supp. 2d 795, 799 (D. Minn. 2009) (holding that a collector laughing at a debtor was "not remotely comparable to the type of conduct that has been found to give rise to liability under § 1692d" and comparing cases).

---

[42] Further still, even if Regulation F provided a potential basis on which to enter summary judgment in Pritchett's favor in regard to her section 1692d claim—which it most certainly does not—Midland still would not be in violation of the regulation because "Midland sent one letter in response to [Pritchett's] letter[.]"  *Moss*, Order, (Doc. 20 at p. 15), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Dec. 31, 2024) (rejecting the plaintiff's arguments sounding in Regulation F and dismissing her section 1692d claim).  *Cf. Kirk*, 2024 WL 3240564, at *2.

Pritchett fails to cite any case or other authority standing for the proposition that she is entitled to summary judgment in her favor on her section 1692d claim.[43]  Her lack of cited support is not surprising, because mailing a single informational letter in response to a consumer's dispute is not harassing, oppressive, or abusive conduct under the FDCPA.  *See supra.*  As to her section 1692d claim, Pritchett's motion for partial summary judgment should be denied.

## III.    Pritchett is not entitled to summary judgment in her favor on her section 1692e claim.

Section 1692e of the FDCPA precludes debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  In connection with her section 1692e claim, Pritchett denotes the applicability of the "least sophisticated consumer" standard to such a claim[44] and then cites the case of *Kuehn v. Cadle Co., Inc.*, 335 F. App'x 827 (11th Cir. 2009), to argue that "if [a] court is not presented with a reasonable inference of how the statement [in a debt collector's letter to a consumer] could be true, then the debt collector has violated § 1692e(10) as a matter of law and summary judgment would be proper."[45]  She then posits that Midland's response letter violated section 1692e(10) as a matter of law because it supposedly "misrepresented that Pritchett requested about the accuracy of her account" and "misrepresented that Pritchett requested documentation of the account and attached account statements to her account."[46]

---

[43] *Compare* Doc. 30 at pp. 18-20.

[44] *See* Doc. 30 at p. 21.  In reviewing a claim brought under section 1692e of the FDCPA, a court views the conduct at issue through the lens of the "least-sophisticated consumer"—*i.e.*, a consumer who is "presumed to have only a 'rudimentary amount of information about the world,'" but "will be 'willing[ ] to read a collection notice with some care.'"  *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1269 (11th Cir. 2019) (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010)).

[45] Doc. 30 at p. 21.

[46] Doc. 30 at pp. 21-22.

As an initial matter, the *Kuehn* case is palpably distinguishable from the facts of this case. In *Kuehn*, the defendant-debt collector sent the plaintiff-consumer a dunning letter stating that the plaintiff's failure to provider her tax identification number ("TIN") would result in a fine being imposed upon her by the Internal Revenue Service (the "IRS"); furthermore, the defendant in *Kuehn* admitted "this this is only true if it had to file a 1099-C, and nothing had yet occurred that made filing a 1099-C necessary." 335 F. App'x at 830. As such, the court held that the defendant's false "threat that [the plaintiff] would be subject to an IRS penalty for failure to furnish her TIN . . . violated the [FDCPA] as a matter of law." *Id.* at 831. Here, though, Midland's letter does not misrepresent anything—much less the material applicability of a punitive fine imposed by the federal government[47]—and Midland most certainly has not "admitted" that its response letter to Pritchett contains a false statement.

Additionally, even if Midland's statements at issue were "false" or "deceptive"—which they were not—they still would not be material. In order for Midland's response letter to violate section 1692e, it must be "*materially* misleading"—*i.e.*, it must "influence [Pritchett]'s decision or ability to pay or challenge [her] debt." *Miljkovic v. Shafritz & Dinkin, P.A.*, No. 8-14-cv-635-T-33TBM, 2014 WL 3587550, at *8 (M.D. Fla. July 18, 2014) ("[T]o state a § 1692e claim, the plaintiff must allege that the conduct was materially misleading. To be materially misleading, a statement must 'influence a consumer's decision or ability to pay or challenge a debt.'") (citation omitted), *aff'd on other grounds*, 791 F.3d 1291 (11th Cir. 2015). In other words, "only ***material*** misrepresentations are actionable under § 1692e." *Jones v. Jason A. Craig & Assocs., P.C.*, No. 5:18-cv-207 (MTT), 2019 WL 362273, at *3 (M.D. Ga. Jan. 29, 2019) (emphases added); *see id.* ("A debt collector's statement or representation is material if it can influence the decision or ability

---

[47] *Cf.* Doc. 27-2 at pp. 47-48.

of the least sophisticated consumer to pay."). *See also, e.g.*, *Toussaint v. Katzman Chandler, P.A.*, No. 21-cv-60635-VALLE, 2022 WL 1664114, at *5 (S.D. Fla. Apr. 1, 2022) ("Thus, false but immaterial representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under 15 U.S.C. § 1692e."); *Stewart v. Bureaus Inv. Grp., LLC*, No. 3:10-cv-1019-WKW, 2015 WL 7572312, at *15-20 (M.D. Ala. Nov. 24, 2015) (dismissing the plaintiff's section 1692e claims on materiality grounds); *Moss*, Order (Doc. 20 at p. 17), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Dec. 31, 2024) ("This Court also rejects [the plaintiff]'s argument that the Eleventh Circuit has rejected a materiality element.") (dismissing the plaintiff's section 1692e claim). Here, there is nothing in the record establishing that the allegedly false or deceptive statements set forth in Midland's response letter affected Pritchett's decision-making process; on the contrary, Pritchett readily acknowledged that she knew her dispute letter "didn't ask [Midland] to do any confirming of their information" and "didn't ask Midland for any . . . [information or documentation]."[48] *Cf. Bell v. Midland Funding LLC*, No. 6:17-cv-673-Orl-41KRS, 2018 WL 11243692, at *5 (M.D. Fla. Mar. 8, 2018) ("The least sophisticated consumer would know whether or not she received a statement, and as such, this technically false statement would not impact the consumer's ability to make intelligent decisions.").

Rather than a dunning letter that falsely threatened a civil fine by the IRS like the letter at issue in *Kuehn*, Midland's response letter to Pritchett is obviously more akin to the nearly identical response letter at issue in the *Moss* case,[49] where the court held that the subject statements set forth in Midland's letter "are not the type of material misstatements giving rise to a claim under [section

---

[48] Doc. 27-1 at p. 14 (53:17-18); *id.* at p. 12 (45:8-9); *see also id.* at p. 11 (42:23-43:6).

[49] *Cf. Moss*, Ex. B to Def. Midland Credit Mgmt., Inc.'s Mot. to Dismiss Am. Compl. and Br. in Support (Doc. 10-2 at pp. 2-3), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Aug. 30, 2024), *with* Doc. 27-2 at pp. 47-48.

1692e because they would not have misled even the least-sophisticated consumer." *Moss*, Non-Final Rpt. and Recommendation (Doc. 13 at p. 15), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Oct. 15, 2024) (emphasis added), *adopted by Moss*, Order (Doc. 20 at pp. 15-18), No. 1:24-cv-03180-TCB-CMS, (N.D. Ga. Dec. 31, 2024) (dismissing the plaintiff's substantively analogous section 1692e claim).[50]  Accordingly, Pritchett is not entitled to summary judgment in her favor on her section 1692e claim, and her motion for partial summary judgment thus should be denied.

## Conclusion

Pritchett has not demonstrated that she "is entitled to judgment as a matter of law" on her section 1692c claim, section 1692d claim, or section 1692e claim.  FED. R. CIV. P. 56.  Accordingly, and pursuant to the foregoing, Midland respectfully requests that this Court enter an order denying Pritchett's motion for partial summary judgment.

Date: January 27, 2025

/s/ Thomas R. DeBray, Jr.
One of the Attorneys for Defendant,
Midland Credit Management, Inc.

**OF COUNSEL:**

Jason B. Tompkins
Thomas R. DeBray, Jr.
Connor W. Herfurth
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Telephone: (205) 251-8100

---

[50] Pritchett also cites the case of *Campuzano-Burgos v. Midland Credit Management, Inc.*, 497 F.Supp. 2d 660 (E.D. Pa. 2007), in connection with her argument concerning her section 1692e claim.  *See* Doc. 30 at pp. 21-22.  However, on appeal, the United States Court of Appeals for the Third Circuit overturned the *Campuzano-Burgos* opinion cited by Pritchett.  *See* 550 F.3d 294, 302 (3rd Cir. 2008) ("The [defendants'] letters were not deceptive or otherwise actionable.  Because we must also address the order granting summary judgment to plaintiffs, we will reverse and remand with directions to enter summary judgment for defendants.").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been filed on this the 27th day of January, 2025, via CM/ECF, which will electronically notify the following counsel of record:

John G. Watts
M. Stan Herring, Jr.
Patricia S. Lockhart
W. James Sears, IV
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 879-2447

*Counsel for Plaintiff*

*/s/ Thomas R. DeBray, Jr.*
Of Counsel