## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBBIN PRITCHETT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:23-cv-01365-RDP** |
| | } | |
| **MIDLAND CREDIT MANAGEMENT INC.,** | } | |
| | } | |
| | } | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendant's Motion for Summary Judgment (Doc. # 26) and Plaintiff's Motion for Partial Summary Judgment (Doc. # 29). The parties have fully briefed the Motions. (Docs. # 26, 28, 34, 39; 29, 30, 37, 38). For the reasons explained below, Defendant's Motion (Doc. # 26) is due to be granted and Plaintiff's Motion (Doc. # 29) is due to be denied.

## I.    Background and Procedural History

This is a case involving an alleged violation of the Fair Debt Collection Practices Act ("FDCPA") related to Midland Credit Management ("Defendant") mailing Plaintiff a letter.

The court has gleaned the facts set out in this opinion from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at a trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

At the times relevant to this case, Defendant was a debt collector as defined by § 1692a(6) of the FDCPA, and Plaintiff was a consumer as defined by § 1692a(3) of the FDCPA. (Docs. # 34

at 8; 25 at 26; 39 at 1). The alleged debt arose out of transactions that were primarily for personal, family, and household purposes – such as paying income taxes. (Docs. # 34 at 8; 39 at 1; 24 at 7; 30 ¶ 1; 37 ¶ 1).

In September 2018, Plaintiff opened a Citi Diamond Preferred credit card account, which was issued to her by Citibank and bore her original account number, xxx-xxx-xxx-7505. (Docs. # 28 at 3-4; 34; 27-1 at 6; 27-2 at 11; 30 ¶ 2; 37 ¶ 2). Plaintiff used her credit card account to make purchases, and she made payments on the account. (Docs. # 28 at 4; 34; 27-1 at 6; 27-2 at 11, 13, 16, 18, 20, 22). Plaintiff's last paid on her account on July 16, 2021. (Docs. # 28 at 4; 34; 27-2 at 11, 22).

Plaintiff did not pay off the balance of that credit card. (Docs. # 28 at 4; 34; 27-1 at 6; 27-2 at 11, 40-42). Citibank charged off (in other words, wrote off as a loss) Plaintiff's account on or about February 18, 2022. (Docs. # 28 at 4; 34; 27-2 at 11, 40-42). "Effective April 22, 2022, [Defendant] purchased a pool of charged-off accounts from Citibank," including Plaintiff's "underlying Citi Diamond Preferred credit card account[.]" (Docs. # 27-2 at 1-2, 42; 28 at 5; 34). Since April 22, 2022, Defendant has owned all the rights, title, and interest in Plaintiff's account. (Doc. # 28 at 5; 34; 27-2 at 2-3, 7-10).

On April 26, 2022, Citibank sent a letter to Plaintiff's home address of 7664 Williams Creek Lane, Eight Mile, Alabama 36613. (Docs. # 24-5 at 2; 30 ¶ 2; 37 ¶ 2). The letter noted that Citibank had sold her underlying account to Defendant. (Doc. # 27-2 at 3 ¶ 7). Plaintiff does not recall receiving that letter. (Doc. # 27-1 at 8).

On or about July 6, 2023, Defendant mailed Plaintiff a letter with several options for payment plans regarding her underlying Citi Diamond Preferred credit card account. (Docs. # 27-2 at 3, 43-44, 3; 27-1 at 7-8; 30 ¶ 3; 37 ¶ 3). Plaintiff was already being represented by the Watts

& Herring, LLC firm (her counsel in this case) in an unrelated matter when she received this letter from Defendant, and she shared the letter with Watts & Herring. (Docs. # 28 at 5; 34; 27-1 at 8-9).

Plaintiff's lawyers drafted her underlying dispute letter to Defendant, and Plaintiff "sign[ed] off on the letter being sent" to Defendant. (Docs. # 28 at 6; 34 at 5; 24 at 10; 27-3 at 2). Plaintiff's dispute letter was mailed via certified mail to Defendant on or about July 19, 2023. (Docs. # 24-7; 24-3 at 3-4; 30 ¶ 4; 37 ¶ 4). Defendant signed for it as received on or about July 25, 2023. (Docs. # 28 at 7; 34; 24-3 at 4; 27-2 at 3, 45-46; 30 ¶ 11; 37 ¶ 11). The letter stated:

> I'm disputing this debt (and all other debts you claim that I have) under the Fair Debt Collection Practices Act only. You can find all debts you claim to have on me – I dispute them all. Please note I do <u>NOT</u> want you to send me any information – I simply want you to know that I dispute any debts you claim to have on me. This is not a request for validation or verification. I am not interested in you sending me any documentation. I'm trying to be clear – do not send me any documentation through the mail as receiving mail from you is inconvenient to me. If you want to communicate with me, there are only two convenient ways I want you to communicate with me – text and email. All other ways are inconvenient, and I do not want you to communicate with me in any way other than email or text.

(Docs. # 24-7 at 3; 27-2 at 46) (emphasis in original). The letter also identified Plaintiff's home address by printing it under her name. (Docs. # 24-7 at 3; 30 ¶ 6; 37 ¶ 6). Her letter did not provide any information regarding the specific amount of "this debt" or the accounts that comprised "all other debts" that she was disputing. (Docs. # 28 at 6; 34; 27-2 at 3-4, 46). Her letter also did not explain any basis for her dispute. (Docs. # 28 at 6; 34; 27-2 at 3-4, 46).

Plaintiff admitted at her deposition that she did not consider receiving "mail" itself to be inconvenient. (Docs. # 28 at 6-7; 34; 27-1 at 12). Rather, when asked whether "it was the content of what was in the letter from [Defendant] that was inconvenient" Plaintiff responded (over her attorney's objection) "Yes. Yes, it is inconvenient to get that type of mail," and when asked "But not the mail in general?" she replied: "No, not junk mail or your light bill or water bill, no. (Docs.

# 28 at 6; 34; 27-1 at 12). Plaintiff also testified that receiving her power bill in the mail was not inconvenient, because "[e]verybody gets a power bill," and so it is not personal "financial information" that people usually keep undisclosed. (Doc. # 27-1 at 10-11). Plaintiff also indicated that she did not know whether she would have suffered anxiety if she had gotten the letter forming the basis of this lawsuit in an email rather than in the mail, and later answered "Yes" to the question: "So it's the fact that it was in the mail and not an email or text?" (Docs. # 28 at 6; 34; 27-1 at 16).

Plaintiff testified that her children often visited her home and sometimes retrieved her mail. (Doc. # 27-1 at 10). Because her children did not know about her financial situation or Defendant's collection attempts, Plaintiff believed her children might be worried if they found this mail and that Plaintiff would be embarrassed if her children became aware of the matter. (Docs. # 27-1 at 10; 24-3 at 15-16). Plaintiff stated that this caused her "worry [] stress" and "anxiety," which led her to lose sleep and not enjoy (or even do) hobbies and activities in which she had previously engaged. (Docs. # 27-1 at 15; 24-3 at 15-16).

Plaintiff also stated that receiving collection notices in the mail was inconvenient because her husband might see them and worry, particularly given the financial struggles that the family was experiencing around that time. (Doc. # 24 at 13, 20-21, 23). Plaintiff further testified that her neighbors sometimes opened her mail if it was misdelivered, and she worried her neighbors might open any mail from Defendant that suggested financial trouble. (Doc. # 24 at 11, 13).

Defendant reviewed its records and confirmed that it owned Plaintiff's underlying Citi Diamond Preferred account. (Docs. # 28 at 8; 34; 27-2 at 3-4). Defendant mailed a response letter to Plaintiff's home address on or about July 31, 2023. (Docs. # 28 at 8; 34 at 9 ¶ 7; 27-2 at 4, 47-51; 24-3 at 4; 30 ¶ 12; 37 ¶ 12). The letter stated that Defendant had reviewed its account

information, confirmed the accuracy of such information, and was enclosing account-related documentation (including a copy of Citibank's prior account statement to Plaintiff relating to the charge-off of her account). (Docs. # 28 at 8; 34 at 9 ¶ 8; 27-2 at 47, 50-51; 30 ¶¶ 13-14; 37 ¶¶ 13-14). The opening sentence of the letter stated that "[w]e understand that you are inquiring about or requesting documentation about the accuracy of our records concerning this account." (Docs. # 27-2 at 47; 30 ¶ 13; 37 ¶ 13). One of Defendant's representatives declared that this letter was sent "for the purpose of responding to [Plaintiff's] dispute with information regarding her aforementioned account." (Doc. # 27-2 at 3-4).

Under a heading entitled "Next steps," the letter invited Plaintiff to provide a "[w]ritten explanation and documentation demonstrating any errors in [Plaintiff's] account information." (Docs. # 28 at 8; 34; 27-2 at 47). The letter further stated that "as previously requested by you, we will no longer be contacting you regarding this account by phone or in writing unless required by law or you request that we resume communications." (Docs. # 28 at 8; 34 at 6; 24-21 at 2; 27-1 at 11, 13).

Defendant's response letter did not demand any payment from Plaintiff, did not mention any payment deadlines, did not indicate that Defendant might seek imposition of additional fees if Plaintiff did not tender a payment, did not threaten litigation or attorneys' fees, did not include a detachable "payment coupon," and did not threaten any punitive action. (Doc. # 27-2 at 47-48). The letter stated on a page entitled "Important Disclosure Information": "Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." (Docs. # 24-21 at 3; 30 ¶ 15; 37 ¶ 15). The letter displayed the balance owed ($2,031.98) and an interest amount of $0 on the first page. (Doc. # 24-21 at 2). The attached Citibank account statement listed the balance owed to Citibank before the charge-off

as well as the interest Citibank had charged during that billing period. (Doc. # 27-2 at 50-51). The letter also provided a mailing address for making payments on the debt, and a mailing address and phone number for making disputes or tendering full satisfaction of the debt. (Doc. # 24-21 at 2-3). Plaintiff received the letter. (Doc. # 27-1 at 11).

Plaintiff's Complaint asserts that the letter was sent "in an attempt to intimidate, harass, and oppress" her. (Doc. # 1 at 12 ¶ 17). When asked at her deposition how Defendant had oppressed her, Plaintiff initially stated that she "can't answer," but after a break she responded that "it was a burden" and that "[Defendant] abused their power in sending me that letter after I sent them my letter asking them not to send me any more letters." (Doc. # 27-1 at 13). Plaintiff also later agreed, at her counsel's prompting, that Defendant had oppressed her when it denied her from exercising her FDCPA right to tell Defendant to stop communicating with her in a certain way. (Doc. # 27-1 at 16-17).

Plaintiff indicated that receiving Defendant's July 31 letter increased her stress and anxiety, and that it caused her to lose sleep and suffer mental and emotional distress. (Docs. # 24 at 23; 24-3 at 13-16; 27-1 at 14). Plaintiff has not sought medical or mental health treatment in connection with her claims or allegations, stating that she does not "want to get on medicine like that, but I may have to eventually." (Docs. # 28 at 10; 34; 27-1 at 14; 27-3 at 5). She also has not incurred any "out-of-pocket expense, including but not limited to attorneys' fees, as a result of any action undertaken by [Defendant] relative to the allegations," and has not suffered any "monetary loss because of [Defendant's] purported actions and/or omissions relative to the allegations." (Docs. # 28 at 11; 34; 27-3 at 3-5).

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party

bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.    Analysis

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to [e]nsure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses.'" *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1301-02 (11th Cir. 2014) (quoting 15 U.S.C. § 1692(e)).

Plaintiff asserts in a single count that, by sending the July 31 letter,[1] Defendant violated the following provisions of the FDCPA: §§ 1692c, 1692c(a), 1692c(a)(1), 1692d, 1692e, 1692e(10), 1692f, and 1692f(1), along with relevant portions of Regulation F. (Doc. # 1 at 13). Defendant has moved for summary judgment on this count, arguing that it did not violate §§ 1692c, d, e, or f, and that Regulation F does not support a private cause of action. (*See* Doc. # 28). Plaintiff has moved for partial summary judgment as to her claims under §§ 1692c, d, and e (Doc. # 29). The court addresses each of these alleged FDCPA violations below.

In general, to state a claim under the FDCPA, a plaintiff must (1) show that she was "the object of collection activity arising from a consumer debt," (2) that the defendant "is a debt collector as defined by the statute," and (3) that the debt collector "has engaged in an act or omission prohibited by the FDCPA." *Helman v. Bank of Am.*, 685 F. App'x 723, 726 (11th Cir. 2017) (internal quotations omitted). The parties do not dispute that Defendant is a debt collector, Plaintiff is a consumer, and that the alleged debt arose out of transactions primarily for personal, family, and household purposes. (Docs. # 34 at 8; 25 at 26; 39 at 1; 24 at 7; 30 ¶ 1; 37 ¶ 1). Therefore, all of the disputes center around whether Defendant engaged in an act or omission prohibited by the FDCPA.

### A.    In Connection with the Collection of a Debt

The parties agree that to maintain any FDCPA claim a plaintiff must establish that a communication or action was taken "in connection with the collection of any debt." (Docs. # 30 at 10-11; 37 at 6). Because some version of this standard is a prerequisite for all of Plaintiff's claims,

---

[1] None of Plaintiff's claims in this case concern the July 6 letter from Defendant. (Docs. # 28 at 6; 34; 1 at 8-13).

the court examines this question on a provision-by-provision basis and considers the substance of each provision.

Section 1692c applies when a debt collector "communicate[s]" with a consumer "in connection with the collection of a debt." 15 U.S.C. § 1692c. The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The Eleventh Circuit has defined the term "communication" broadly, holding that "[i]n order to be considered a communication, the only requirement of the information that is to be conveyed is that it must be regarding a debt." *Hart v. Credit Control, LLC*, 871 F.3d 1255, 1257-58 (11th Cir. 2017) (holding that a voicemail left by a debt collector that stated it wanted to speak to a consumer "as part of its efforts to collect a debt" was a "communication" under the FDCPA). As the *Hart* decision further stated:

> In order to be considered a communication, the only requirement of the information that is to be conveyed is that it must be regarding a debt. We can assume that by choosing to omit any qualifier other than requiring that the call must be regarding a debt, Congress meant to allow any information, as long as it regards a debt. There is no requirement in the statute that the information must be specific or thorough in order to be considered a communication.

*Id.* at 1258 (internal citation omitted).

Under this rule, there is no question that the July 31 letter was an FDCPA "communication." The letter was sent "regarding" Plaintiff's $2,031.98 debt – it listed this amount as the "purchase balance" of her charged-off account, included addresses for payments or "an instrument tendered as full satisfaction of a debt," and contained a notice that "this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." (Doc. # 24-21 at 2-3). The voicemail in *Hart* that was held to be an FDCPA "communication" contained even less detail than the July 31 letter here. The voicemail message said "[t]his is Credit Control

10

calling with a message. This call is from a debt collector. Please call us at [number]. Thank you." *Hart*, 871 F.3d at 1256. Therefore, the July 31 letter was a "communication" in connection with a debt under the FDCPA.

The Eleventh Circuit requires that a version of the word "communication" be present in an FDCPA provision before applying the FDCPA's "broad" definition of "communication." *See, e.g.*, *Rivas v. Midland Funding, LLC*, 842 F. App'x 483, 488 (11th Cir. 2021) (distinguishing 1692e(11), which uses the word "communication," from § 1692e(2)(A), which uses the word "representation"). The rest of Plaintiff's claims concern provisions of the FDCPA that do not use the word "communication" or "communicate;" but, each of those other provisions "require[s] that the challenged communications be 'in connection with the collection of a[] debt.'" *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1267 (11th Cir. 2022) (citing 15 U.S.C. §§ 1692d, 1692e(10), 1692f(1)).

Because this phrase or the terms in it are not defined in the FDCPA, the court looks to their plain meaning. *Cf. LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010) (using "plain meaning" to define terms that "the FDCPA does not purport to define"). In discussing the plain meaning of this phrase as applied to a letter, the Eleventh Circuit has explained that it looks for "statements that demand payment and mention additional fees if payment is not tendered." *Kinlock v. Wells Fargo Bank, N.A.*, 636 F. App'x 785, 787 (11th Cir. 2016) (citing *Caceres*, 755 F.3d at 1302; *Reese v. Ellis, Painter & Adams LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012)). "A demand for payment need not be express. A demand may be implicit." *Id.* An implicit demand is present in "a letter that indicates that it is being sent to collect a debt, states the amount of the debt, describes how the debt may be paid, and provides the address to which the payment should be sent and a phone number." *Id.* (citing *Caceres*, 755 F.3d at 1303 n.2).

The July 31 letter at issue here contains no express demands for payment or mention of "additional fees if payment is not tendered." *See id.* (citing *Caceres*, 755 F.3d at 1302). It does, however, contain an implicit demand for a payment because it "indicates that it is being sent to collect a debt, states the amount of the debt, describes how the debt may be paid, and provides the address to which the payment should be sent and a phone number." *Id.* (citing *Caceres*, 755 F.3d at 1303 n.2).

The July 31 letter also differs from instances in which courts in this circuit have found that a statement was *not* "in connection with the collection of debt," such as in *Alhassid v. Nationstar Mortgage, LLC*, in which a monthly account statement included a bold, uppercase statement "THIS IS NOT A BILL," did not "request or demand payment . . . state an amount that is due, or imply that payment is requested in any other way." 771 F. App'x 965, 968 (11th Cir. 2019). The July 31 letter contained no such disclaimer; rather, it stated "this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." (Docs. # 24-21 at 3; 30 ¶ 15; 37 ¶ 15). The July 31 letter also stated the amount that was due and implied that payment was requested by listing addresses for sending the payment. In the light of these features, the court concludes that the July 31 letter was in connection with the collection of a debt.

Because the July 31 letter satisfies the prerequisite requirement that it be a "communication" or other means in connection with a debt, the court considers whether Plaintiff has presented evidence showing that Defendant violated each of the specified FDCPA provisions.

### B.    Section 1692c(a)(1)

Section 1692c(a) of the FDCPA provides that "a debt collector may not communicate with a consumer in connection with the collection of any debt – (1) at any unusual time or place or a

time or place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1).

The parties disagree over whether Plaintiff's July 19 letter, which instructed: "do not send me any documentation through the mail as receiving mail from you is inconvenient to me" (Docs. # 24-7 at 3; 27-2 at 46), is sufficient to put Defendant on notice that receiving another mailed letter would violate § 1692c(a)(1). Defendant argues that Plaintiff has only argued that the manner (not the location) of communication through mail was inconvenient. (Docs. # 28 at 13; 37 at 13). Plaintiff contends that she sufficiently put Defendant on notice that mail to her home was inconvenient, and that Consumer Financial Protection Bureau ("CFPB") guidance explains that emails or text messages would not have been linked to this inconvenient location. (Docs. # 30 at 16-17 (citing Supplement I to Regulation F); 34 at 21 (same)).

After careful review, the court concludes that Plaintiff has not shown that Defendant violated § 1692c(a)(1). None of Plaintiff's arguments concern the timing of the letter, so the court construes her claim to be that the *place* where she received the letter violated § 1692c(a)(1). Dictionaries largely define the noun "place" in terms of a physical location, such as a home address.[2] Plaintiff did not tell Defendant that it was inconvenient for her to receive mail at her home (or at any other specific place). She simply wrote: "I'm trying to be clear – do not send me any documentation through the mail as receiving mail from you is inconvenient to me." (Docs. # 24-7 at 3; 27-2 at 46). The term "mail" does not define a location, although, to be sure, mail is often received at a specific location. Plaintiff never explicitly told Defendant that receiving a

---

[2] *See, e.g.*, https://www.merriam-webster.com/dictionary/place (defining "place" as a "physical environment," "physical surroundings," "a building or locality used for a special purpose," "a particular region, center of population, or location"); https://www.oed.com/dictionary/place_n1?tab=meaning_and_use#29904902 (defining "place" as "a particular part or region of space; a physical locality," and "[a] dwelling, a house; a person's home").

communication at her home was inconvenient, nor did she imply this by instructing Defendant that email and text messages were convenient, as this instruction contained no reference to the "place" at which she would open these "convenient" communications.

Further, Plaintiff has not presented any Rule 56 evidence to substantiate this claim. The evidence that Plaintiff highlights is about why she considered receiving *mail* to be inconvenient. This evidence included Plaintiff's testimony that her children often visited her home and retrieved her mail (Doc. # 27-1 at 10), that she believed her husband would worry if he saw the collection notices in the mail (Doc. # 24 at 13, 20-21, 23), and that she could be embarrassed because her neighbors sometimes opened her mail if it was misdelivered. (Doc. # 24 at 11, 13). But none of this evidence explains how asking Defendant to communicate by email or text would result in communication at a more convenient *location* than Plaintiff's home. Nor does it explain how Defendant should have concluded that Plaintiff was protesting the location of the communication (rather than the method). For these reasons, the court interprets Plaintiff's instruction as a request to limit the method of the communication rather than where the communication is received.

Plaintiff's other testimony supports this conclusion. Indeed, her testimony directly contradicts the notion that receipt of mail was inconvenient. After all, Plaintiff testified that she did not consider receiving "mail" to be inconvenient. (Docs. # 28 at 6-7; 34; 27-1 at 12). And, Plaintiff's other testimony appears to contradict any idea that her home was an inconvenient location for receiving mail. She testified that she did not consider "junk mail or your light bill or water bill" inconvenient. (Docs. # 28 at 6; 34; 27-1 at 12). But even more importantly, § 1692c(a)(1) does not prohibit communication by inconvenient methods, but only at an inconvenient place or time. Because Plaintiff has only presented evidence and argued that

Defendant communicated with her by an inconvenient method, she has failed to establish a dispute of material fact on her claim under § 1692c(a)(1).

Defendant cites a series of district court cases decided in 2024 that held when a borrower asserts that a communication method (like mail) is inconvenient, that assertion concerns the *medium* of communication, and therefore a debt collector's use of the inconvenient method does not violate § 1692c(a)(1). Although Plaintiff argues that these cases involve distinct fact patterns as compared to the instant case, upon careful review, the court finds them on point and persuasive.

For example, *Marks v. Javitch Block LLC* considered a case where a defendant had communicated with the plaintiff by letter after he had stated that the only convenient way to contact him was by email. 2024 WL 838709, at *2 (E.D. Tex. Feb. 27, 2024), *report and recommendation adopted* 2024 WL 1134037 (E.D. Tex. Mar. 14, 2024). Yet, *Marks* held that there was no § 1692c(a)(1) violation, and the court expressly observed that "Plaintiff does not state that the place at issue – his home – was inconvenient, but rather the medium of the communication – a letter – caused harm." *Id.* Similarly here, Plaintiff did not specify that receiving mail at her *home* was inconvenient. (Docs. # 24-7 at 3; 27-2 at 46). She only said "receiving mail from you is inconvenient to me." (*Id.*). It is immaterial that Plaintiff (unlike the *Marks* plaintiff) explicitly (rather than implicitly) said mail was inconvenient. Just as in *Marks*, Plaintiff failed to allege and present facts to show that the *location* of her home – not just the medium of physical mail – was inconvenient.

Similarly, in *Kirk v. Credit Management LP* after the plaintiff told the defendant that the only convenient form of communication was email the defendant sent a verification letter by mail. 2024 WL 3240564, at *1 (M.D. Ala. June 28, 2024). The court cited *Marks* and found that the dispute concerned the medium used to communicate, rather than the time or place of

communication. *Id.* at *2. Further, the court highlighted that the FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person *through any medium*." *Id.* (quoting 15 U.S.C. § 1692a(2) (emphasis added in *Kirk*)). As discussed in *Kirk*, a plaintiff can establish a § 1692c(a)(1) violation by showing that the defendant had sent the letter to the wrong address, *see Duran v. Midland Credit Mgmt., Inc.*, 2016 WL 3661538, at *4 (S.D.N.Y. June 30, 2016), or by demonstrating that the defendant had continued mailing letters to one address after the plaintiff had asked them to send mail to another mailing address. *See Drew v. Mamaroneck Cap., LLC*, 2017 WL 4018854, at *3 (M.D. Ga. Sept. 12, 2017).

The district court in *Ford v. Midland Credit Management, Inc.* considered similar facts. There, the plaintiff wrote a letter disputing a debt, requested validation, and asked that the defendant only contact him via email. 2024 WL 3813750, at *1 (N.D. Ga. July 8, 2024). The court concluded that, although the letter implied that non-email communications were inconvenient, the plaintiff had not indicated that receiving an email at his home at the same time as he received a letter would be inconvenient. *Id.* at *3. Therefore, the *Ford* court held that the plaintiff's dispute was not related to the location or time of communication, but rather with the manner of communication. *Id.*

The district court in *Lusk v. Midland Credit Management, Inc.* came to a similar result. In *Lusk*, a defendant sent a letter to a plaintiff who had previously stated that the only convenient way to contact her was by email. 2024 WL 4171355, at *1 (W.D. Okla. Sept. 12, 2024). The court concluded that because the plaintiff had not shown that her home was an inconvenient place for communication, the dispute was with the medium of the letter. *Id.* at *2-3. As in *Kirk*, *Ford*, and *Lusk*, here Plaintiff has not alleged that her home was an inconvenient place for communication. Rather, she stated that receiving *mail* was inconvenient for her. So, the court joins a line of other

district court decisions in concluding that Plaintiff has not established a § 1692c(a)(1) violation under these factual allegations.

Nor does the court find Plaintiff's argument based on Regulation F persuasive. Plaintiff cites to the CFPB's supplemental interpretation of Regulation F ("Supplement I") that states: "Some communication media, such as mailing addresses and landline telephone numbers, are associated with a place . . . . Other communication media, such as email addresses and mobile telephone numbers, are not associated with a place." 12 C.F.R. Pt. 1006, Supp. I, 6(b)(1)-1 ("Communications or attempts to communicate at unusual or inconvenient places"). The idea would be that Plaintiff implied that her home was an inconvenient place because she said that mail ("associated with a place") was inconvenient and that email and texts ("not associated with a place") are convenient.

There are two points that cut against this agency interpretation. First, although federal courts give "respect" to an executive branch interpretation of a statute, that interpretation does not supersede the judiciary's independent judgment. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). Therefore, where a federal court's judgment differs from that of the CFPB's, the court is "not at liberty to surrender, or to waive it." *Id.* at 387 (quoting *United States v. Dickson*, 15 Pet. 141, 162 (1841)). Second, the final rule concerning this portion of Supplement I was published in 2020. *See* 85 F.R. 76734-01 (Nov. 30, 2020). Nevertheless, the district court decisions decided since that rule was published (which are cited above) contain persuasive reasoning that the CFPB's interpretation is wrong. Given the court's own reasoning and the persuasive rationale of other district courts, the court concludes that Plaintiff has not established a § 1692c violation, and that Defendant is entitled to summary judgment on this claim.

17

### C.    Section 1692d

Section 1692d of the FDCPA prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute enumerates examples of conduct constituting a violation, including (1) threats of violence, (2) use of obscene language, (3) publication of debtor lists, (4) advertising the sale of a debt to coerce payment, (5) repeated phone calls, and (6) anonymous phone calls. 15 U.S.C. § 1692d. As further discussed below, sending a letter confirming a debt amount does not rise to the level of harassment, oppression, or abuse.

When applying § 1692d, courts in the Eleventh Circuit view a debt collector's conduct "from the perspective of a consumer whose circumstances make[] him relatively more susceptible to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). But, even viewed from this perspective, a single letter mailed in response to a dispute letter (also mailed) is not harassment, oppression, or abuse. Although § 1692d's list of examples is non-exhaustive, it helps inform the court of the type of actions that could constitute a § 1692d violation. Considering that list, the letter at issue does not contain any threats of violence, obscene language, publication or threat of publication of a debtor list; it presents no threat of coercion of payment by advertisement or otherwise; and there have not been any (much less repeated) phone calls or anonymous communications directed to Plaintiff. In fact, there were no explicit threats at all (or, for that matter, any implicit threats that the court can readily discern). The letter did not mention payment deadlines, state what would happen if Plaintiff did not pay down her debt, or refer to penalties or interest that might accrue if the debt remained unpaid. (*See* Doc. # 27-2 at 47-48). To the contrary, here, Plaintiff's claims are based on a *single* letter. Indeed, that letter explicitly disclaimed that it would be repeated: "as previously requested by you, we will no longer be

contacting you regarding this account by phone or in writing unless required by law or you request that we resume communications." (Docs. # 28 at 8; 34 at 6; 24-21 at 2; 27-1 at 11, 13).

Another district court presented with very similar facts – in fact, the court notes that the creditor in the case sent a virtually identical letter – reached a similar conclusion. *See Moss v. Midland Credit Mgmt., Inc.*, 2024 WL 5455250 (N.D. Ga. Dec. 31, 2024). In *Moss*, the borrower wrote to the debt collector "stating that she disputed all debts, that she did not want [the collector] to send her any information, and that any further communications were to be via text or email, not by U.S. mail." *Id.* at *1. Just as here, the debt collector followed up with a single letter that acknowledged the request. *Id.* The *Moss* court contrasted the debt collector's letter with the examples listed in § 1692d and concluded that, because the letter was vastly different, the letter was not harassing, oppressive, or abusive. *Id.* at *5. And, the court reached that conclusion despite the fact that the *Moss* plaintiff argued that the court should consider Regulation F, which states in relevant part that "[i]n general . . . a debt collector must not communicate or attempt to communicate with a person through a medium of communication if the person has requested that the debt collector not use that medium to communicate with the person." 12 C.F.R. § 1006.14(h)(1). The *Moss* court noted that the regulation's provision contained only one relevant exception: "[i]f a person initiates contact with a debt collector using a medium of communication that the person previously requested the debt collector not use, the debt collector may respond once through the same medium of communication used by the person." *Id.* at §1006.14 (h)(2)(ii) (cited in *Moss*, 2024 WL 5455250, at *5). The *Moss* court reasoned that because the plaintiff had initiated contact with the debt collector by mailing a dispute letter to them, the debt collector did not violate Regulation F by responding once through the same medium (*i.e.*, a letter sent by mail). *Moss*, 2024 WL 5455250, at *5-6.

This exception also applies here because Plaintiff initiated contact with Defendant by mailing a letter. This interpretation is consistent with caselaw applying Regulation F in this context. *See Rock v. Stillman, P.C.*, 2024 WL 5357157, at *1 (E.D. Mich. Oct. 28, 2024) (consumer initiated contact by mailing dispute letter); *Peters v. Lockhart Morris & Montgomery, Inc.*, 2024 WL 4437139, at *2 (W.D. Okla. Oct. 7, 2024) (same); *Winsted v. Carter-Young, Inc.*, 2024 WL 4204926, at *1 (W.D. Okla. Sept. 16, 2024) (same); *Kirk*, 2024 WL 3240564, at *1 (same). It is also consistent with the CFPB's interpretation of what "initiates contact" means. *See* 12 C.F.R. Pt. 1006, Supp. I, 6(b)(1)-2i ("Consumer-initiated communication") (describing how, even if a debt collector calls a consumer first, the consumer can still initiate contact by later emailing that debt collector during a time the consumer had said was inconvenient).

Finally, the court adds that another exception contained in 12 C.F.R. § 1006.14(h) also applies here. Section 1006.14(h)(2)(iii) states: "[i]f otherwise required by applicable law, a debt collector may communicate or attempt to communicate with a person in connection with the collection of any debt through a medium of communication that the person has requested the debt collector not use to communicate with the person." *Id.* at § 1006.14 (h)(2)(iii). Here, although Plaintiff had requested that Defendant not use mail to communicate with her, Defendant was required by law to respond to her dispute letter with a mailed letter. The statutory (as opposed to regulatory) language is instructive here. Under 15 U.S.C. § 1692g(b), "[i]f the consumer notifies the debt collector in writing . . . that the debt . . . is disputed . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b); *see also Peters*, 2024 WL 4437139, at *2 (holding that this statutory subsection qualifies as "applicable law" under § 1006.14(h)(2)(iii)). Therefore, because Plaintiff told Defendant that she

was "disputing this debt," Defendant was required under 15 U.S.C. § 1692g(b) to *mail* a copy of its verification of the debt to Plaintiff, which it did. Therefore, compliance with § 1692g(b) exempts Defendant from § 1006.14(h)(1).

For these reasons, Defendant is entitled to summary judgment on the § 1692d claim.

### D.    Section 1692e(10)

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Subparagraph (10) of this subsection specifies that the following is a violation: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). The Eleventh Circuit has "adopted a 'least-sophisticated consumer' standard to evaluate" a § 1692e claim. *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014), *overruled on other grounds by Midland Funding, LLC v. Johnson*, 581 U.S. 224, 234-35 (2017) (citing *LeBlanc*, 601 F.3d at 1200). As the Eleventh Circuit has held, if the parties genuinely disagree about the "proper inferences to be drawn" from a debt collector's communication, "[s]uch a disagreement, if reasonable, is one for resolution by the trier of fact, not by the court in a summary judgment context." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1176 (11th Cir. 1985) (citing *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969)).

Plaintiff argues that Defendant violated this provision "when it misrepresented and mischaracterized what [Plaintiff] stated in her July 19, 2023 letter" – *i.e.*, by falsely indicating that Plaintiff had requested information about the accuracy of her account and about documentation of the account (including account statements). (Doc. # 30 at 21-22). Plaintiff also argues that this

communication made her more likely to respond, contact Defendant, and make a payment. (*Id.* at 22).

The general rule is that the question of whether the least-sophisticated consumer would construe conduct to be deceptive is one for the jury to decide. *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1307 n.11 (11th Cir. 2015). To be sure, "[t]he least sophisticated consumer does not start each day anew with no memory of the last; instead, [s]he has a 'reasonable knowledge of h[er] account's history.'" *Lait v. Med. Data Sys., Inc.*, 2018 WL 1990513, at *5 (M.D. Ala. Apr. 26, 2018) (quoting *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009)). Based on her account history, which included her July 19 dispute letter, Plaintiff argues that the least-sophisticated consumer could have found Defendant's July 31 letter misleading. If the letter and Plaintiff's own lack of sophistication were considered in a vacuum, that would be a reasonable argument. For example, although Plaintiff said she was not interested in Defendant sending her *any* documentation, Defendant stated "[w]e understand that you are . . . requesting documentation." (*Id.*). So, again in a vacuum, a reasonable inference from a review of these two letters could be that Defendant's correspondence misrepresented what Plaintiff's July 19 letter had said, which could be misleading – at least to the least-sophisticated consumer.

But this observation does not end the court's inquiry. In this case, there are additional undisputed facts that are material to the court's analysis. The touchstone of an inquiry into whether a debt collector's communication is misleading is reasonableness. After all, the Eleventh Circuit has held, "'the [least-sophisticated consumer] test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.'" *Crawford*, 758 F.3d at 1259 (quoting *LeBlanc*, 601 F.3d at 1194). Our Circuit is not alone in imposing this

"objective component" to the least-sophisticated consumer test; in fact, it drew this nuance from sister circuits who have adopted a similar standard. *See LeBlanc*, 601 F.3d at 1194 (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)) (also citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008), *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85 (2d Cir. 2008)). Thus, while the Eleventh Circuit has "generally resisted tailoring the 'least sophisticated consumer' standard to the individual consumer," *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1275 (11th Cir. 2016), that observation must be read in a manner consistent with a reasonableness examination. District courts in this circuit have noted that "[t]o preserve the reasonableness of the FDCPA's application, courts should, in most cases, only impose liability where the misrepresentations at issue *actually affect* the consumer's behavior." *Stewart v. Bureaus Inv. Grp., LLC*, 2015 WL 7572312, at *15 (M.D. Ala. Nov. 24, 2015) (emphasis added); *see also Heagerty v. Lueder, Larkin, & Hunter, LLC*, 2016 WL 11580705, at *11 (N.D. Ga. Oct. 21, 2016) (quoting *Stewart*). That presents a problem for Plaintiff. Here, it is undisputed that the July 31 letter did not change Plaintiff's behavior – there is nothing in the Rule 56 record indicating that she sent any payments or responses after receiving the July 31 letter.

After careful review, the court concludes it would be a "bizarre or idiosyncratic interpretation[] of [the] collection notice[]" to hold that Plaintiff, who has been represented by counsel at least since her lawyers drafted the July 19 dispute letter, was injured by any allegedly confusing response of Defendant. *See Crawford*, 758 F.3d at 1259 (quoting *LeBlanc*, 601 F.3d at 1194). To be clear, counsel has not just represented her in this matter. It is undisputed that Plaintiff's counsel drafted her July 19 dispute letter. (Docs. # 28 at 6; 34 at 5; 24 at 10; 27-3 at 2). Moreover, in addition to the concession that Plaintiff's counsel drafted it, the letter bears the fingerprints of a legal drafter. It contains language engineered to set up an FDCPA lawsuit: "I do

<u>NOT</u> want you to send me any information . . . This is not a request for validation or verification. I am not interested in you sending me any documentation. I'm trying to be clear – do not send me any documentation through the mail as receiving mail from you is inconvenient to me." (Docs. # 24-7 at 3; 27-2 at 46) (emphasis in original). So, as part of undertaking representation of Plaintiff, counsel ghost-drafted the July 19 dispute letter, and then sat back to see what response Plaintiff would receive. It follows that it is undisputed that Defendant was not dealing with an unsophisticated consumer. It was actually dealing with highly sophisticated lawyers. Under these unique undisputed facts, it strains logic to conclude that a consumer who has retained counsel to help communicate with a debt collector should be evaluated solely as if she were the *least*-sophisticated consumer, particularly when, as here, sophisticated lawyers surreptitiously authored the letter on her behalf and were available to interpret it for her.

Courts in other circuits have imposed a heightened liability standard in FDCPA cases when a consumer is represented by attorneys who receive the letters and thus act as intermediaries. *See, e.g.*, *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002), *overruled on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ("Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior."); *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 574 (8th Cir. 2015) (quoting *Kropelnicki*). To be clear, the court need not express any opinion about what standard may apply when a consumer retains counsel *after* receiving such a letter from a debt collector. The court is only evaluating the undisputed facts before it. Plaintiff had already retained counsel, her lawyers secretly crafted the initial dispute letter, and she was able to rely on her lawyers in that process. But, while not controlling, these decisions are informative. The Ninth Circuit has discussed this scenario in the

context of the FDCPA's purpose, writing that "[t]he statute as a whole thus suggests a congressional understanding that, when it comes to debt collection matters, lawyers and their debtor clients will be treated differently." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 935 (9th Cir. 2007).

The Rule 56 record indicates the July 31 letter was sent to Plaintiff – not her attorneys. Nevertheless, the key point here is that her lawyers drafted the opening letter for her and advised her as to Defendant's July 31 response. In other words, Plaintiff's attorneys drafted a dispute letter for her signature that was designed to establish the legal basis for bringing an FDCPA lawsuit. Plaintiff cannot seek the assistance of attorneys in one instance (receiving help in drafting a dispute letter and having counsel available to advise how she should proceed) and then later claim the benefit of a least-sophisticated consumer standard (in claiming to be misled by the response to that dispute letter).

It bears repeating that the July 31 letter did not affect Plaintiff's behavior. Although courts in the Eleventh Circuit do not always require that a communication actually affect a consumer's behavior, they do "in most cases." *See Stewart*, 2015 WL 7572312, at *15. For example, the panel in *Starosta v. MBNA America Bank, N.A.*, considered a § 1692e(10) claim and emphasized that "[m]ost importantly, there is no indication that the [communication] misled, confused, or deceived [the consumer] or her attorney." 244 F. App'x 939, 942 (11th Cir. 2007). In *Stewart*, the district court considered a § 1692e(10) claim and highlighted that "[t]he pleadings do not indicate that [the consumer] would have acted differently had [the debt collector] correctly identified itself" where the allegedly false representation was how the debt collector had identified itself. 2015 WL 7572312, at *19. And in *Moss*, the district court concluded that because there were no factual allegations that the plaintiff was "actually misled or that her decision-making process was affected

by anything in Midland's letter," and that the statements "would not have misled even the least-sophisticated consumer," the complaint failed to state a § 1692e(10) claim. 2024 WL 5455250, at *6.

These rulings make sense. A plaintiff must have a concrete (that is, "real, and not abstract") injury to bring a claim before an Article III court. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021); *id.* at 424 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). As the Supreme Court has emphasized, even if Congress creates a cause of action "under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original). So, a plaintiff who had lawyers orchestrating the communications with the debt collector and assisting her with how to respond to the July 31 letter, cannot be viewed as a "least-sophisticated consumer." Again, she in no way changed her behavior due to the July 31 letter.

Defendant is entitled to summary judgment on the § 1692e claim.

### E.    Section 1692f(1)

Generally, § 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Subparagraph (1) of this subsection, which Plaintiff cites in her Complaint (*see* Doc. # 1 ¶ 23), lists the following example of a § 1692f violation: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Defendant argues that its letter was merely informational and thus does not amount to an unfair or unconscionable means to collect a debt. (Doc. # 28 at 27). Plaintiff neither responds to

this argument (*see* Doc. # 34) and has not moved for summary judgment as to § 1692f(1). (*See* Doc. # 30).

The court has reviewed the record (even though the Eleventh Circuit has held that a district court need not "parse a summary judgment record to search out facts or evidence not brought to the court's attention."). *Atlanta Gas Light Co. v. UGI Utils., Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006). After that review, the court concludes that there is no evidence that Defendant's July 31 letter constituted a "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Especially because Plaintiff does not brief this issue, the court is at a loss as to what she is asserting as a violation.

Even if the court evaluated Plaintiff's claim under the "catch-all prohibition on unfair and unconscionable conduct," *Miljkovic*, 791 F.3d at 1308, it is still not clear what this claim is based on. The only portion of the letter that arguably could be construed as potentially "unfair" (in the sense that it is misleading) is the first sentence: "[w]e understand that you are inquiring about or requesting documentation about the accuracy of our records concerning this account." (Docs. # 27-2 at 47; 30 ¶ 13; 37 ¶ 13). Otherwise, the letter only stated information that appears true and did not contain any threats or demands of payment. So, there is no question for a jury to decide as to whether the letter violates § 1692f.

Examples of cases where courts have found that a debt collector's behavior was "unfair or unconscionable" include sending a letter that the consumer testified contained several incorrect statements and that threatened to initiate legal action to collect debt, *LeBlanc*, 601 F.3d at 1188, stating to a consumer "YOU ARE EITHER HONEST OR DISHONEST YOU CANNOT BE BOTH, *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 756, 763-65 (7th Cir. 2006), and pursuing a writ of garnishment against a debtor who was current on their account, *Fox v. Citicorp*

*Credit Servs., Inc.*, 15 F.3d 1507, 1517 (9th Cir. 1994). There is no dispute of fact as to the content of the July 31 letter, so the only remaining question is whether the contents of that letter would be considered unfair or unconscionable.

Comparing the July 31 letter to the types of behaviors that courts have held were unfair or unconscionable, the court concludes that the letter is of a different character and thus does not violate of § 1692f. The letter does not threaten to initiate legal action – indeed, it does not threaten anything at all – and therefore differs from the letter in *LeBlanc*. (*See* Doc. # 27-2 at 47-48). It also does not direct any language toward Plaintiff's character as did the statement in *McMillan*. And finally, there is no evidence or assertion that Plaintiff is current on her account, making this unlike the situation in *Fox*.

For these reasons, summary judgment is due to Defendant on Plaintiff's § 1692f claim.

## IV.    Conclusion

For the reasons discussed above, Defendant's Motion (Doc. # 26) is due to be granted and Plaintiff's Motion (Doc. # 29) is due to be denied. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this March 28, 2025.

R. DAVID PROCTOR
CHIEF U.S. DISTRICT JUDGE